(74 App. Div. 452.)

### KRUMENAKER v. DOUGHERTY.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. MUNICIPAL CORPORATIONS—WATER SUPPLY—ILLEGAL USE—EVIDENCE.

Plaintiff's premises were found supplied with two water-service pipes,—one metered by the city, and the other unmetered; the pipes being so arranged that, by closing a stopcock, water could be obtained through the unmetered pipe without any disturbance of the meter. On a disconnection of the unmetered pipe for several days, the amount of water registered was much greater than before. The owner denied any illegal use of water, but offered to compromise a bill tendered him for water illegally used. *Held*, that an illegal appropriation of water was shown.

2. SAME—AMOUNT OF WATER ASCERTAINED.

Where premises were found supplied with a properly metered water-service pipe, and also with an unmetered service pipe, through which water has been illegally drawn, it was proper to determine the amount for which the user was liable for illegal use of water by comparison of the quantity which the meter had registered with amounts registered during a week when the unmetered pipe was disconnected, taken together with the volume of the user's business.

3. SAME—SHUTTING OFF SUPPLY.

New York City Charter, § 478, authorizes the cutting off of the use of water for any violation of the rules of the water department, and by section 469 it is the duty of the commissioner of water supply to collect the revenues from the use of water. *Held*, that the commissioner has authority to cut off a supply of water on failure of the user to pay for water illegally taken through an unmetered pipe.

Appeal from special term, New York county.

Suit by Albert Krumenaker against J. Hampden Dougherty, as commissioner of the water supply of the city of New York. From an order continuing a temporary injunction pendente lite, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Chase Mellen, for appellant.
David C. Myers, for respondent.

HATCH, J. The plaintiff is the owner of premises Nos. 512–514 West 166th street, in the borough of Manhattan, city of New York.

Upon these premises the plaintiff carries on the business of beer bottling, and also uses a part of the same for the residence of his family. Upon the premises there has heretofore been installed by the city of New York a water meter for the purpose of registering the quantity of water supplied to said premises. Upon the 12th day of March, 1902, the defendant presented a water bill to the plaintiff for water used, covering the period between November 9, 1896, to March 11, 1902, amounting to the sum of $991.19. This bill the plaintiff refused to pay, and thereupon the defendant threatened to cut off the supply of water furnished to said premises unless the plaintiff paid the same. The latter alleges that he does not owe the amount of such bill; that the threatened action of the defendant is illegal and wrongful; that, if it is done, the plaintiff will suffer irreparable damage therefrom; for which reasons he asks the defendant be enjoined from cutting off such supply. Upon motion made, the court complied with the plaintiff's request, and continued the injunction. We think that it is established beyond doubt, both by the papers in opposition to the motion, and by the affidavits submitted by the plaintiff in reply thereto, that the plaintiff has been engaged in the illegal appropriation of water for the supply of his premises and the business thereon conducted by him. From all the papers in the case, we deem the following facts fairly established: On the 1st day of March, 1902, there was found upon these premises two water-service pipes entering the same, to only one of which was the water meter attached. The pipes operated in supplying water jointly or independently at the will of the owner, and water was supplied through both pipes. By means of a stopcock, water could be shut off from one pipe and supplied by the other; and, when it was shut off from the pipe attached to the meter, the other pipe supplied all of the water necessary for use upon the premises, without registering the amount. Between the 1st and 17th days of March, 1902, the unmetered service pipe was disconnected from the premises by removing a section of such pipe about four or five feet in length. During that period no water was passing through such pipe into the building. It is fairly established, therefore, that the plaintiff was engaged in making illegal abstraction of water from the city water supply without paying therefor, in fraud of the rights of the municipality. It is evident, therefore, that he does not come into this court with clean hands, and is therefore not entitled to the favorable consideration of the court. An examination of the record kept by the meter between the 4th day of January, 1902, and the 1st day of March of the same year, when the unmetered service pipe was in operation, shows that there was registered by the meter a consumption of 2,300 cubic feet of water, —an average of about 41 feet per day for a period of 56 days. From March 1st to March 20th, during the period when such unmetered service pipe was disconnected, and all water furnished to the premises was forced to pass through the pipe to which the meter was attached, the consumption was 14,140 cubic feet, or an average of 744 feet per day for a period of 19 days. These figures are eloquent in description of the use made of the unmetered service pipe. With these figures as a basis, computation was made, resulting in the bill

which was presented to the plaintiff for payment. It is evident that the exact amount of water which passed through the unmetered service pipe, and of which the city was defrauded of revenue, can never be accurately measured or ascertained. It must always be the subject of approximation, based substantially upon a consideration of the facts as ascertained from the inspection, and the measurement of the supply which passed through the meter after the unmetered service pipe was disconnected, and the volume of plaintiff's business. It is evident, also, that the plaintiff understood, as fully as did the city, the illegal use which he had been making of the unmetered service pipe, and of the fraud which he had perpetrated upon the municipality. His offer of $600 in compromise of the bill, coupled with his admission of knowledge of the service pipe, although accompanied with a denial that he had made use of it, is plainly significant of guilty knowledge upon his part.

Occupying this position, and having, for all practical purposes, conceded the unlawful use, it only remains to be seen whether the defendant has authority of law to summarily cut off the plaintiff's supply of water. By the provisions of section 478 of the Greater New York charter, authority is given to cut off the use of water for any violation of the rules of the water department; and by section 469 of the charter it is made the duty of the defendant to collect the revenues from the sale and use of water from the public water supply. It does not need argument to show that defrauding the city of its revenues authorized the commissioner of water supply to take action thereon, and, if the bill was not paid for the water used, the statute furnishes abundant remedy for the proposed action. In Brass v. Rathbone, 153 N. Y. 435, 47 N. E. 905, Judge Martin, in speaking for the court, said:

"As the statute organizing the defendant provided that they might force a compliance with those rules by shutting off the water, the act threatened was justified, and could not be properly restrained. * * * That right having been conferred upon the defendants by law, the court has no authority to prevent its exercise."

The statutory authority in the present case authorizing such action is as broad as was the authority in the case then under consideration by the court. The doctrine of this case was recognized in McEntee v. Kingston Water Co., 165 N. Y. 27, 58 N. E. 785. Therein it was held error to vacate an injunction restraining the city from cutting off the water supply, but this was for the reason that statutory authority was not given in that case to cut off the supply, and the case itself presented a clear question of fact as to whether the defendant had fulfilled its contract with the plaintiff in furnishing a sufficient supply of water as was required by it. The right here recognized also received support in Silkman v. Commissioners, 152 N. Y. 327, 46 N. E. 612, 37 L. R. A. 827.

It is evident upon the whole record that the plaintiff has been treated as fairly by the defendant as he was entitled. By his act the accurate measurement of the amount of water which he has consumed, and for which he has not paid, can only be approximately determined,

and he is in no position to ask that the court strain any rule in his favor.

It follows that the order should be reversed, with $10 costs and disbursements, and the motion be denied, with $10 costs, and the injunction be dissolved. All concur.

---

(74 App. Div. 224.)

### FROUNFELKER v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. MASTER AND SERVANT—RAILROADS—NEGLIGENCE—RULES OF ROAD—PRESUMPTION OF KNOWLEDGE.

2. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

3. SAME—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

4. SAME—NEGLIGENCE—EVIDENCE.

A freight conductor, while sitting in the caboose of his train, which was standing, was killed, owing to his train being run into from behind by another train. The caboose at the end next to the car was furnished with bumpers, but those of the car in front of the caboose were higher than the bumpers of the caboose, though there were 4½ inches of the bumpers of the two cars which met. In an action for the death of a conductor, there was no evidence that if the tops of the bumpers had been on a level the same result would not have followed the collision. *Held*, that the fact that the bumpers were not on a level was not negligence on the part of defendant.

Hatch, J., dissenting.

Appeal from trial term, New York county.