HEALY v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. January 15, 1904.)

1. MUNICIPAL CORPORATION — WATER SUPPLY—DEFECTIVE METER—COLLECTION
   OF BALANCE.
        Under New York City Charter (Laws 1901, pp. 210, 212, c. 466, §§ 473,
   475), providing that where water meters are installed the charge shall
   be for the quantity of water actually used "as ascertained by the meter,"
   where it appears that a meter shows only one-fifth of the amount of
   water used because some of the teeth of its wheels have been filed off,
   though not by the water user, the city is not authorized to withdraw the
   water supply to enforce the collection of the difference between the
   amount actually used and the amount indicated by the meter.
        Van Brunt, P. J., and Hatch, J., dissenting.

Appeal from Special Term, New York County.

Action by Thomas J. Healy against the city of New York and another. From a judgment in favor of plaintiff (83 N. Y. Supp. 574), defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Chase Mellen, for appellants.
M. Edward Kelley, for respondent.

INGRAHAM, J. The defendant Dougherty, as commissioner of water supply, gas, and electricity of the city of New York, threatened to cut off the supply of water furnished to certain premises leased by the plaintiff, whereupon the plaintiff commenced this action to enjoin the defendants from interfering with his supply of water. The defendants, in answer, alleged that under the rules of the department a water meter had been installed to measure the amount of water furnished to the premises occupied by the plaintiff; that this meter had been tampered with, so that it measured but one-fifth of the supply of water actually furnished; that a bill for the amount of water actually furnished in excess of that registered by the meter for which the plaintiff was liable had been furnished by the defendants, and demand made for payment, and payment was refused, and that for this refusal the defendants are entitled to cut off the supply of water; and as a counterclaim the defendants demanded judgment against the plaintiff for the water actually used on the premises which had not been paid for. The court below granted a judgment as prayed for by the plaintiff, and dismissed the counterclaim, and from that judgment the defendants appeal.

It was proved that application had been made to the department for permission to install a water meter upon the premises in question on August 19, 1898, by a plumber acting for the owner or occupant of the premises, and that on August 22, 1898, in pursuance of this application, the department granted such permission. The regulations of the department required that this permit should be presented at the "pipe and meter yard" to obtain a water meter that had been tested by the department. This permit was so presented to the pipe and

meter yard, and the plumber received a meter, No. 118,706. This · particular meter had been shipped to the pipe and meter yard from the manufacturers, the Thompson Meter Company, on the 23d day of August, 1898, and was subjected to the usual test by the officers of the department. After it was thus tested, a seal was placed upon it by the department, so that the mechanism could not be tampered with without breaking the seal. The meter, thus tested and sealed, was delivered to the plumber, who caused it to be installed in the premises occupied by the plaintiff. It was inspected from time to time by the regular inspectors of the department, who in each instance examined the seal and found it intact. The amount of water registered at each inspection was taken by the inspector and returned to the department, and bills were sent to the plaintiff or the owner of the building therefor, which were paid. During this period the water meter was inclosed in a box and kept locked, the key of which was in the possession of the plaintiff, kept by him in a safe, and delivered to· the inspectors of the department when required. The employés of the plaintiff testified that during this period the water meter was not interfered with in any way by the plaintiff or any of his employés, or by any one except the inspectors of the department. In January, 1902, two inspectors of the department visited this meter, and broke the seal, which, while somewhat worn, was still intact, and examined the mechanism; when it was found that 8 of the 10 teeth that worked the dial that registered each thousand cubic feet of water used had been filed off so that the meter could possibly register but one-fifth of the amount of water used when the amount was over a thousand feet. One of the remaining teeth was partly filed, and one tooth of the wheel was intact. When this condition was discovered, the water department gave notice to the plaintiff by presenting to him a bill charging him with· five times the amount of water registered upon this meter, crediting him with the payments already made, and demanding payment of the balance, with a threat that, unless it was paid, the water would be turned off. The plaintiff refused to pay this amount, and the department commenced to make the necessary excavation to shut off the water, whereupon the plaintiff commenced this action and obtained a temporary injunction, which was made permanent upon the trial. The plaintiff testified that he had never in any way interfered with this meter; that he took possession of the premises about the 1st of October, some time after the meter was installed; and his employés in charge of his establishment testified that the meter had never been tampered with while the plaintiff was in possession of the premises. After a new meter was installed and the amount of water used upon the premises ascertained, a new demand was made by the city for water furnished, based upon the amount of water indicated by the new meter as having been used by the plaintiff after the defective meter had been removed; and this charge, which was largely in excess of the first bill rendered, the plaintiff also refused to pay.

The defendants upon this appeal do not claim that it was error to· dismiss the counterclaim, and that will not be considered; the only question being whether or not the plaintiff was entitled to the affirmative relief enjoining the defendants from cutting off the water supply·

to the premises. That this meter was defective, and that such defect had been caused by filing the teeth of the wheel which regulated the dial showing the water furnished above a thousand cubic feet, is not disputed; nor did the plaintiff dispute the evidence of the defendants which tended to show that this meter could register but one-fifth of the amount of water supplied—that is, that the indicator on the meter dial showing the amount of water supplied above a thousand feet would make a complete revolution when 5,000 cubic feet of water was used, instead of when 1,000 feet was used if the meter had been in proper order. This meter having been placed in the plaintiff's premises, and being under his exclusive control from the time it was installed until it was examined and found defective, the necessary presumption is that it was either defective at the time it was furnished, or had been tampered with in some way by those to whom it had been delivered. The evidence offered by the plaintiff tended to show that after he had taken possession of the premises and commenced to use the water the meter had not been interfered with in any way, and it would consequently appear that in some way this meter was defective at the time that it was installed.

By section 473 of the charter (chapter 466, p. 210, of the Laws of 1901) it is provided that:

"The board of aldermen shall hereafter have all power, on recommendation of the commissioner of water supply, gas and electricity, to fix and to establish a uniform scale of rents, and charges for supplying water by the city of New York, * * * but no charge whatever shall be made against any building in which a water meter may have been or shall be placed as provided in this act. In all such cases the charge for water shall be determined only by the quantity of water actually used as shown by said meters."

Section 475 of the charter (page 212) provides that

"The commissioner of water supply is authorized, in his discretion, to cause water meters, the pattern and price of which shall be approved by the board of aldermen, to be placed in all stores, workshops, hotels, manufactories, office buildings, public edifices, at wharves, ferry-houses, stables, and in all places in which water is furnished for business consumption, * * * so that all water so furnished therein or thereat may be measured and known by the said department, and for the purpose of ascertaining the ratable portion which consumers of water should pay for the water therein or thereat received and used. Thereafter, as shall be determined by the commissioner of water supply, the said department shall make out all bills and charges for water furnished by them to each and every consumer as aforesaid, to whose consumption a meter as aforesaid is affixed in ratable proportion to the water consumed, as ascertained by the meter on his or her premises or places occupied or used as aforesaid."

These provisions of the statute would seem to indicate an intention to regulate the charge for water furnished by the city of New York to buildings in which a water meter had been installed by the amount of water supplied to the building as indicated by the meter; and thus, if a meter so installed should show that an amount of water had been used, it would not be competent for the occupant of the building to dispute payment of that amount upon the ground that for any reason the amount indicated upon the meter was not correct; and that the city was also bound, in making its charge for water used, by the

amount of water indicated upon the meter. Thus, section 475 of the charter provides that:

"Thereafter * * * the said department shall make out all bills and charges for water furnished by them to each and every consumer as aforesaid, to whose consumption a meter as aforesaid is affixed in ratable proportion to the water consumed, as ascertained by the meter on his or her premises or places occupied or used as aforesaid."

There is here an attempt to charge for water used upon the premises, which is not "as ascertained by the meter" on the premises or places occupied or used by plaintiff. We are referred to no case in which these particular provisions of the charter have been construed. In Krumenaker v. Dougherty, 74 App. Div. 452, 77 N. Y. Supp. 467, we held that a person who had defrauded the city of its revenue by diverting the water used by him so that it would not pass through the meter and thus be registered, could not maintain an action to restrain the city from cutting off his water supply without paying an amount fixed as the amount of water that he had used which had not passed through the meter. In such case it is the fraud practiced by the person using the water which justifies the city in cutting off his further supply, and the court could not interfere in behalf of one guilty of such a fraud; but in this case there is no evidence that the plaintiff was guilty of fraud. The meter was upon his premises before he occupied them. He accepted the situation that he found there when he took possession of the premises, paid the charges made by the city for water that he used upon the premises, and there is no evidence to show that after he took possession of the premises this meter was in any way interfered with, or that any fraud was committed by the plaintiff or by the owner of the building. Under these circumstances it would appear that by the provisions of the charter the city would make no charge for water except such as was indicated by the meter; and, the charges as indicated by the meter having been paid, the city was not entitled to deprive this plaintiff of a supply of water until he paid an additional sum for water which had been used upon the premises, but had not registered upon the meter.

For this reason I think the judgment appealed from was right, and that it should be affirmed, with costs.

PATTERSON and LAUGHLIN, JJ., concur. VAN BRUNT, P. J., and HATCH, J., dissent upon the ground that the meter shows that plaintiff used five times the amount of water that he paid for.