Harry T. Nusbaum, J.
This action for a declaratory judgment was submitted to me on an agreed statement of facts to determine the liability of the plaintiffs for water meter charges levied and paid by them to the defendant, the City of New York.
The complaint sounds in equity and is addressed to the alleged patent unfairness inherent in requiring the plaintiffs to pay for thousands of gallons of water which passed through and registered on the water meter of the leased premises, but were nevertheless unused by them. The facts briefly stated are as follows:
The plaintiff, Emerson Plastronics, Inc., leased a building owned by the codefendant S&L Holding Corporation (S&L). By the terms of the lease entered into on or about August 30, 1966, between Emerson and S&L, the plaintiff Emerson agreed to pay as "additional rent” the water charges for water consumed in the said premises as imposed by the City of New York. The plaintiffs, Insulating Shapes, Inc., and Walter Lee Chemical Corp. are subtenants who guaranteed performance of the lease. The water consumed at the premises was used for lavatory purposes only.
The water billing for the five-year period prior to December 28, 1972 averaged about $100 per year. However, for the period of February 10, 1972 to November 24, 1972, the bill for water was $11,722.73 and S&L demanded that the plaintiffs pay this amount pursuant to the terms of the lease. The sewer charge for the same period was $2,930.68 for which the owner defendant S&L was liable under the terms of the lease.
*772 On October 10, 1973, the plaintiffs paid the city collector $11,722.73 and $654.25 interest under protest, and subsequently brought this action for a declaratory judgment to determine if the bill in question was invalid, illegal, excessive and unfair. It is undisputed that the high water bill was due to a subterranean break in a water pipe located approximately two and a half feet below the nine-inch concrete basement floor of the premises at a point within the building line. This break caused the meter to register continuously and resulted in the meter readings which brought about the exorbitant billing hereinabove referred to. Neither the plaintiffs nor the defendants were aware of this leak until November 17, 1972.
The City of New York in support of its contention that the water charges levied and collected under protest were properly made, cites section 734(4)-2.0 of the Administrative Code of the City of New York and the cases of Healy v City of New York (90 App Div 170) and Pabst Brewing Co. v Oakley (115 App Div 215). Both of the cited cases dealt with alleged defective water meters and constitute holdings that the water meter measurements and charges based thereon must be deemed conclusive unless there is hard and not casual evidence that the water meter is incorrect.
Nevertheless, despite the finding in those cases that the water meter registration of water consumption must be used as the only criterion for ascertaining the amount of water used, the court in the Pabst case (supra, p 217) went on to say "at least until an extraordinary case of extreme hardship is presented where it is conceded or demonstrated beyond question that through fraud, mistake, or by accident the record made by the meter is erroneous.” Surely the case at bar presents such a case.
As a means of survival, the need for water is second only to the néed for the air we breathe. Blessed by our forebears with a water supply system second to none, we as citizens and our legislative representatives are charged with the duty of protecting and providing a fair allocation of this priceless natural resource among all our citizens, according to need and the intended use thereof. To effectuate this aim, laws have been enacted to provide the means and the agencies through which fair allocations and charges for water can be made (New York Univ. v American Book Co., 197 NY 294).
The charges made for the use of water are not taxes, but *773 rents based upon use and consumption (Silkman v Board of Water Comrs. of City of Yonkers, 152 N Y 327). The intent of the Legislature to base water charges upon actual consumption is evidenced by section 475 of the New York City Charter and the amendment thereto made shortly after the decision in the Pabst case (supra). Under that amendment the water commissioner was permitted to charge at the daily average of water consumed for three months when the meter did not register or was not in use. As a result, our courts have uniformly permitted collections of water charges on the basis of average consumption in all cases involving the failure of a water meter to register, or when a meter was bypassed (People ex rel. Lind v City of New York, 63 Misc 511; Krumenaker v Dougherty, 74 App Div 452; Parsons Constr. Co. v City of New York, 163 Misc 932).
The Legislature and the constituent boards created to guard this invaluable heritage are charged with administering their duties in accordance with the rules of equity. To me at least, the intent of our Legislature and the courts is to require payment for water consumed and not inadvertently wasted. The consumer cannot be required to pay for water which he did not use and concededly went to waste through no fault of his own.
It occurs to this court that to charge the plaintiffs for water which flowed into the ground through an undetectible underground leak would be unjustifiable unless it can be shown: (a) that the break in the pipe was caused by their negligent failure to inspect or maintain the pipe; or (b) that the plaintiff failed to make the repair after notice of the defect. Neither of these facts are present — it being admitted by all parties to this controversy that the tenant plaintiffs acted expeditiously in making the necessary excavation and repair immediately upon being served with a "Leak and Waste Water Notice.”
A water meter is only a measuring device which measures the flow of water through it. It does not determine consumption which is — or should be — the true criterion upon which water charges should be based.
The commissioner has already recognized this fundamental concept by his reduction of sewer rental charges from $2,930.68 to $12.47 for the same period here involved. The water rental charges should accordingly be recomputed to reflect actual use pursuant to actual consumption in accordance with department rules and regulations (Rules and Regu *774 lations of Department of Water Supply, Gas & Electricity Rule B, § 4 [1967 compilation by J. Lee Rankin, Corporation Counsel]; Cumulative Compilation of Rules and Regulations of New York City Agencies, vol 2, ch 32).
Judgment is accordingly granted to the plaintiffs for the relief demanded in the complaint.