OPINION OF THE COURT
Albert H. Buschmann, J.
Plaintiff moves the court for an order striking both defendants’ answers and directing the entry of summary judgment for plaintiff on two causes of action: the first, against defendant U. S. Life Title Insurance Company under its policy of title insurance with plaintiff, to recover the amount of $2,495.75 plus attorneys’ fees of $1,000, on the ground that an incomplete title search done by defendant U. S. Life caused plaintiff to have to pay $2,495.75 in past due water meter charges to defendant City of New York; the second, against the City of New York, et al., to recover the sum of $2,495.75 plaintiff paid to defendant City of New York (under protest) to bring current the aforesaid water meter charges which had caused plaintiff’s premises to be listed for in rem proceedings by defendant City of New York, on the ground that defendant city failed to list the disputed amount on its tax record, so as to be ascertainable by a title search prior to and on January 15, 1976, the date of the closing on plaintiff’s premises, resulting in loss to plaintiff of the aforesaid amount when defendant city demanded payment of the past due charges from plaintiff.
Defendant, U. S. Life Title Insurance Company, cross-moves for an order dismissing plaintiff’s motion and action against it and granting U. S. Life’s cross motion for summary judgment, or, in the alternative, setting the matter down for trial of any fact issues.
Defendant, City of New York, et al., cross-move for sum *407 mary judgment dismissing plaintiff’s complaint as to the city, on the ground that plaintiff has failed to state a cause of action against it.
Plaintiff employed defendant, U. S. Life Title Insurance to search the title of the premises plaintiff planned to purchase located at 613 Seneca Avenue, Ridgewood, New York. Title to the premises was closed on January 15, 1976 with the title policy written by defendant title company becoming effective on that date. As shown on page 16 of the title policy, on closing day, plaintiff made payments for last-minute taxes and sewer and water rent charges. Charges of this type are usually brought current right up to closing time by a telephone call to a title company employee at the tax record office; any such charges found since the first search are then handwritten on to the title policy, at which time they are either paid or otherwise accounted for on the policy, so that all parties are aware of their obligations as to these new-found charges. In this case, certain open water and sewer rent charges in the amount of $436.41 were found to be unpaid. This amount was paid at closing by plaintiff, and this payment was noted on page 16 of the title policy by the title company representative, by the writing in of the words, "omit, see bill attached”, signifying the payment and the presence of verifying receipts, next to the notation of these late charges on the policy. But, typewritten below this handwritten notation, are the words, "Except * * * Policy will Except additional water meter and sewer rent charges since the last reading noted herein”. Finally, below this typewritten exception, are the words, "Water Department Violation #52829 dated 1/29/75 Meter #5943 not registering”. This meter belonged to the premises at 613 Seneca Avenue.
On February 28, 1977, defendant City of New York entered on the tax record against plaintiff’s premises a charge for water allegedly consumed by the former owner from May 17, 1972 up to November 19, 1975, in the amount of $2,495.75. Charges for this period have been presented to plaintiff in two bills, one entered December 28, 1975 for $436.41 and paid by plaintiff at closing; the second dated from June 10, 1976 to August 31, 1976 for the balance in issue. Plaintiff paid this amount under protest to prevent an in rem action against her premises, and now seeks to recover it.
Plaintiff contends that defendant city should return the $2,495.75 paid under protest because the title search at closing *408 time showed that only $436.41 in open water and sewer charges were listed in the tax record as owing for the period of May 17, 1972 to November 19, 1975, which, of course, was paid at closing. Plaintiff further contends that the meter violation reported on page 16 of the title policy was corrected by and before December 28, 1975, when this $436.41 entry was made on the tax record, and that plaintiff relied to her detriment on the correctness and accuracy of said entry of December 28, 1975, as stating the complete and total amount of open water charges owed for the period of May 17, 1972 to November 19, 1975 as a result of the meter violation. As to defendant U. S. Life Title, plaintiff contends that the "continuation report” made on closing day as noted on page 16 of the title policy was incorrectly done, in that a certain special procedure, by which the title company could ascertain what additional water meter charges existed at closing time, was not followed, but instead, defendant title company excepted these possible additional charges from coverage.
Defendant title company contends that the $2,495.75 charge for the period of May 17, 1972 to November 19, 1975 represents additional charges expressly and clearly excepted from coverage in the title policy as accepted by the parties, thus it has no liability for loss arising from such exceptions.
Defendant city contends that there is no cause of action against it since water charges are in rem and, therefore, run with the land, and secondly, that plaintiff cannot rely on the tax records to obtain an up-to-date water consumption reading, but must make use of special procedures by which the Bureau of Water Register makes its most recent records available.
The court finds there are no factual issues material enough to warrant a trial. (Ugarriza v Schmieder, 46 NY2d 471.)
Plaintiffs motion for summary judgment against defendant U. S. Life Title denied; against defendant city also denied.
Cross motion by defendant U. S. Life Title Company for summary judgment against plaintiff granted.
Cross motion by defendant City of New York for summary judgment also is granted.
The first issue the court will address itself to is plaintiffs motion against defendant U. S. Life. Section 432 of the Insurance Law describes the powers of title companies. Subdivision 1 of that section empowers title insurers to "make and to *409 guarantee the correctness of searches * * * for all liens or charges” affecting premises. Subdivision 2 of the same section authorizes title companies to "guarantee or insure” the owners of property against loss occasioned by defective titles and encumbrances thereon. This title insurance is above all a contract between the title company and the insured owner. Like any other contract, a title policy will be construed according to the intention of the parties as spelled out from the language of the policy. The policy in question was clear in the exception of additional water charges found from the date of the last reading. Any charge becoming a lien after the date of the policy was clearly excepted in Schedule B, part one of the policy. Where one of the conditions placed on liability is that charges arising after the effective date of the policy will be excepted, such charges are not covered. The water rent charges in this case arose well after closing and are not covered by the policy. (Dokel v Title Guar. & Trust Co., 147 Misc 72; Mayers v Van Schaick, 268 NY 320.) Plaintiff was represented by counsel at closing, and counsel had ample opportunity to read and comprehend the terms of the policy.
As to defendant City of New York, "charges made for the use of water are not taxes, but rents based upon use and consumption”. (Emerson Plastronics v City of New York, 82 Misc 2d 770, 772-773.) Water rent charges laid on any real estate in the city are, and continue to be until paid, liens on that property. The city properly billed plaintiff for the water used on the premises during the time period of May 17, 1972 to August 31, 1976 including the period of May 17, 1972 to November 19, 1975 covered by the last record of closing, since no one can dispute the city’s right to charge for the water it supplies. (City of New York v Psaty & Fuhrman, 166 Misc 938.)
The real question involving the city is not its right to be paid for the water used during the three and one-half year period from May 17, 1972 to November 19, 1975, but rather is whether the city lists water rent charges on the tax record immediately as they accrue or are laid, for these charges to constitute a lien on premises. Plaintiff contends that the absence of such a prompt listing caused her loss of $2,495.75, since only $436.41 was listed there at closing time as due and owing for the years in question.
The court finds the city acted lawfully and is not liable to the plaintiff. Section 415(1)-17.0 of the Administrative Code of *410 City of New York, as then applicable, makes charges for metered water due and payable when entered. Section 415(1)-16.0 of the Administrative Code as then applicable charged the Commissioner of Public Works to cause to be transmitted to the Director of Finance an account of all water rents and charges as the same become due or accrued. Section D17-1.0 of title D of the Administrative Code defines "tax lien” for purposes of title D, as "[a]ny unpaid tax, assessment, sewer rent, sewer surcharge or water rent” which is a lien on real property. (Emphasis supplied.) Section D17-4.0 of the Administrative Code provides that, as then applicable, that a "tax lien”, specifically a water rent having become a lien and meaning due and payable which has been due and unpaid for a period of one year from the date on which such charge became a lien, may be foreclosed by the city. (Local Laws, 1977, No. 6 of City of New York.) Section D17-5.0 of the Administrative Code authorizes the Finance Administrator to prepare from time to time a "list of delinquent taxes” of all parcels subject to foreclosure, within the context of section D17-4.0.
Defendant city is correct in its statements in its cross motion that it, (the city) does not have to list water rent charges on the tax record the moment they accrue. The Administrative Code requires the city to keep accurate records available, of course, but primarily for bookkeeping purposes. It is only when such unpaid charges become ripe for an in rem action that the city must list these charges on the tax record. This listing does not create the lien; it gives the city a framework to enforce what already is a lien. Until so eligible, the most accurate and up-to-date readings and charges are kept in the Bureau of Water Register which, as defendant states in his cross motion, makes its latest charges available to people like title searchers for a minimal fee.
 Plaintiff in this case failed to take advantage of this special procedure. It was up to plaintiff and plaintiffs attorney to carefully examine the title report to see if any problems existed. A reading of page 16 of the policy would certainly give plaintiff or her attorney notice of impending further water charges by virtue of the inoperative meter. Plaintiff failed to request such a special reading; plaintiff merely had to notify the title company that she was unsatisfied with the report as far as the water rent charges and wanted the record searched at the Bureau of Water Register. This was the *411 responsibility of plaintiff or her attorney, not the title company.
The court does not hold that plaintiff may have a valid cause of action, however, it is not against the present defendants.
Summary judgment granted for defendants against plaintiff.