HERBIL HOLDING Co. et al., Appellants, v COMMONWEALTH
LAND TITLE INSURANCE COMPANY, Respondent.

Second Department, November 18, 1992

## APPEARANCES OF COUNSEL

*Cohn, Rosenthal & Avrutine,* Baldwin *(William S. Cohn* and *Howard D. Avrutine* of counsel), for appellants.

*Kirschenbaum & Kirschenbaum, P. C.,* Garden City *(Samuel Kirschenbaum* and *Ira Levine* of counsel), for respondent.

## OPINION OF THE COURT

COPERTINO, J.

█ In order to determine whether the Supreme Court properly dismissed the complaint we must, *inter alia,* interpret the clause in a title insurance policy which excludes from coverage a loss arising from rights asserted by a "person in possession" of the subject real property. Specifically, we must decide if the exclusion bars recovery after a successful claim by a record owner that the judgment of foreclosure under which the insureds purchased the property was improperly entered against him. The question appears to be one of first impression in New York, and we answer it in the negative.

A judgment of foreclosure and sale, dated April 11, 1983, was entered in an action in the Supreme Court, Nassau County, entitled *Fidelity Bond & Mtge. Co. v Robert A. Barbieri,* Index No. 25985/82. A foreclosure sale was held on June 1, 1983. The successful bid of approximately $19,000 was made by the plaintiffs. The property was improved with a single-family house.

On June 3, 1983, the plaintiffs ordered a title search from T.P.S. Abstract Corp., an agent of the respondent Commonwealth Land Title Insurance Company (hereinafter Commonwealth) before issuing a title insurance policy. The abstract company thereafter furnished a certificate and report of title which was "marked up" by its title closer at the closing held on July 1, 1983. Under Schedule B of the certificate, a notation "Except" was made next to item 4, "[r]ights of tenants or persons in possession". The purchase price was paid, and a deed to the property dated July 1, 1983, was executed and delivered to the plaintiffs by the Referee in foreclosure. It was duly recorded in the office of the Nassau County Clerk on July 7, 1983. In exchange for a $459 premium, Commonwealth issued its policy to the plaintiffs, effective July 1, 1983, in the amount of $65,000. In keeping with the notation made at the closing, Schedule B of the policy identified "Rights of tenants or persons in possession" as one of the exceptions.

The plaintiff Herbil Holding Co. then commenced a summary proceeding to recover possession of the premises in the District Court, Nassau County, First District. Shortly thereafter, Robert Barbieri moved in the Supreme Court, Nassau

County, to vacate the judgment of foreclosure. Barbieri asserted that he and his former wife (Janet Barbieri) jointly owned the property which had been the subject of the foreclosure action, but that he had never been served with process. He stated that he and his wife were divorced in January 1972, that he had not lived in the house since that time, and had learned of the action "by pure luck * * * near the very end of June, 1983". He further stated that he intended to satisfy the mortgage upon vacatur of the foreclosure judgment.

Robert Barbieri's motion in the foreclosure action resulted in a demand by the plaintiffs that Commonwealth defend them. Commonwealth engaged counsel and agreed to pay for the defense in accordance with the terms of the policy. The plaintiffs then cross-moved to dismiss the motion to vacate, for leave to intervene in the foreclosure action, and for a hearing on service. In the event Barbieri prevailed, they demanded a refund of the money they paid for the property. By order entered October 11, 1983 (Brucia, J.), the motion to vacate the judgment of foreclosure was granted. So, too, was that branch of the cross motion which sought the refund, and the plaintiffs' money was refunded.

By letter dated September 4, 1984, the plaintiffs demanded $46,000 from Commonwealth, which represented the difference between the approximately $19,000 returned to them by the foreclosing mortgagee and the $65,000 for which title was insured, which amount was allegedly the market value at the time of purchase. Commonwealth refused, stating, in a letter dated September 13, 1984, that the policy was one of indemnity, not guarantee, and asserting that the plaintiffs had already received the money they had paid.

The plaintiffs then commenced the instant action to recover the $46,000, plus interest on the sum of the approximately $19,000 for the period it was held by the Referee and the foreclosing mortgagee, counsel fees, and other expenses incurred in connection with their purchase. The respondent answered, alleging two affirmative defenses: (1) the plaintiffs had "received full indemnity for the monies expended" when they recovered their purchase money, and (2) there was an exception from coverage set forth in the policy for the rights of tenants or persons in possession.

In order to resolve the issues presented, the parties submitted a "Stipulation of Agreed Statement of Facts" to the Supreme Court, from which we have drawn much of the

foregoing. Worthy of particular note is that the parties agreed that Robert Barbieri was "in possession" of the subject premises at the time title closed. In resolving the instant action upon this stipulation, the court relied on general principles of contract law and held that the exception for the "rights of tenants or persons in possession" absolved the title company from liability. This appeal ensued.

██ The plaintiffs' first contention on appeal is that Commonwealth waived its right to assert the exception because the only reason given for its refusal to pay damages up to the policy limits was that the plaintiffs had already received a refund of the purchase price. We agree with Commonwealth that this argument lacks merit. The plaintiffs do not claim that they suffered any prejudice from the failure to assert as a ground for disclaimer the exception for the "rights of tenants or persons in possession". Under the circumstances, Commonwealth is not estopped from asserting that exception from coverage (see, Guberman v William Penn Life Ins. Co., 146 AD2d 8, 12).

We turn now to the exception for "rights of tenants or persons in possession." The plaintiffs urge that the purpose of this exception is to insulate the insurer from the expense of evicting tenants or others "in possession" whose rights arose through the prior owner. The plaintiffs point out that here, however, Robert Barbieri was that owner and Commonwealth had "guaranteed" that their title was superior to his. Since his right of possession arose solely from his ownership, which was evident in the chain of title, the plaintiffs assert that his claim was covered by the policy.

Commonwealth contends that the insureds lost their right to pursue any claim for damages under the policy of insurance when they accepted a refund of the full purchase price from the mortgagee. It bases this contention on the fact that, after the plaintiffs intervened in the foreclosure action, they sought only a refund from the mortgagee, and nothing at all from Barbieri, the party whose motion threatened their title. Commonwealth claims that the plaintiffs could have asked the court to fashion a remedy pursuant to CPLR 5015 (d) and 5523, enabling them to recoup the fair market value of the property, and, because they made no such application, the court was unable to grant that relief. This omission, argues Commonwealth, triggers the application of another exclusion, which reads as follows: "Judgments against the insured or estates, interests, defects, objections, liens or incumbrances

created, suffered, assumed or agreed to, by or with the privity of the insured". Commonwealth contends that the plaintiffs' "acquiescence to the judgment" divesting them of title bars a claim against it.

■ We disagree. In their cross motion the plaintiffs sought, *inter alia,* dismissal of Robert Barbieri's motion or a hearing to challenge the assertion that he never had been served with process. That is not "acquiescence," as Commonwealth puts it. The request for a refund was for alternative relief only in the event Barbieri's application was granted. We therefore conclude that the insured never acquiesced or agreed to the vacatur of the foreclosure judgment, and the plaintiffs could turn to Commonwealth for loss of their bargain *(see, Smirlock Realty Corp. v Title Guar. Co.,* 97 AD2d 208).

As to the exclusion for the "rights of tenants or persons in possession" itself, Commonwealth simply relies on the stipulated fact that Robert Barbieri was "in possession" at the time of issuance of the policy, and contends that coverage therefore can be denied under the exception. There is no New York authority interpreting such an exception, and we thus turn to the decisions of courts in other jurisdictions which have been confronted with a similar problem.

In an oft-cited Florida case the court described the purpose of an exception for "the rights or claims of parties other than the insured in actual possession of any or all of the property" as follows: "The rationale for including an actual possession exclusion in a title insurance policy stems from the fact that *possession of the land is notice of an interest in it * * ** When a person, who does not appear in the chain of title, is found in possession of property it may indicate, for example, that he is making claim to the property by adverse possession, or that he is claiming under an unrecorded deed. A title examiner, however, seldom visits the land the title to which he is concerned with * * * Thus, both to protect themselves and to put their client on notice of this state of affairs, title examiners and title insurance companies generally exclude from their title opinions and policies claims of parties in actual possession of the land insured [but] in order for actual possession to place those acquiring title to the subject property on inquiry, such possession must be open, visible, and exclusive" *(Guarantee Abstract & Tit. Ins. Co. v St. Paul Fire & Mar. Ins. Co.,* 216 So 2d 255, 257 [Fla]).

The easement at issue in that case—one for a water pipeline —had been recorded before the insured's purchase. However, it is clear that the holding of the court was based on the fact that the pipeline was buried and thus hidden from view. The exclusion did not apply because the insureds were not on notice of the "actual possession". Notwithstanding its reference to the chain of title, the court did not reach the question of what effect the recordation of the easement might have had if the pipeline had been visible.

In *Pruett v Mississippi Val. Tit. Ins. Co.* (271 So 2d 920 [Miss]) the Supreme Court of Mississippi resolved the question of recordation in favor of the insured. In *Pruett,* the plaintiff insured had purchased property through which a drainage ditch ran. A "Drainage District" had an easement permitting it to enter, remove soil, and place the soil on adjoining land. The court rejected the insurer's argument that, unlike the situation in *Guarantee Abstract (supra),* there were visible indications of the easement and that the policyholder thus was "put * * * on inquiry as to the rights of the possessor" *(Pruett v Mississippi Val. Tit. Ins. Co., supra,* at 921). It indicated that the obvious nature of the ditch would be significant only if, *inter alia,* the easement enjoyed by the District was not of record. The court's decision flowed from its evaluation of the policy as a whole. Under "Conditions of This Policy" the policy excluded (1) losses by reason of the "rights, titles or occupancies of parties in actual possession", and (2) "claims undisclosed of record arising under any act, thing or trust relationship". Another policy exception excluded "all rights of parties in possession [holding] unrecorded * * * easements" *(Pruett v Mississippi Val. Tit. Ins. Co., supra,* at 921-922). Reading these sections together, the court concluded that the purpose of the "actual possession" exception was to exclude from coverage the rights of parties in actual possession whose right or title was not of record. The court also stated that there was nothing in the policy to suggest that the insurer was not to be held liable for damages arising from recorded instruments not specifically excepted from policy coverage. Finally, in a comment that appeared to reflect its approach to title insurance in general, the *Pruett* court stated that, in its opinion, "one of the reasonable expectations of a policyholder who purchases title insurance is to be protected against defects in his title that appear of record" *(Pruett v Mississippi Val. Tit. Ins. Co., supra,* at 922).

Other courts have held recordation to be of paramount importance as well. In *Nautilus, Inc. v Transamerica Tit. Ins.*

*Co.* (13 Wash App 345, 534 P2d 1388), the insurer was held obligated to defend an adverse possession claim because it was disclosed by the filing of a plat in the county records. In a case involving a forged deed, a possession exception was held to exclude only those claims of persons not within the chain of title or whose claim was not based on a recorded deed *(Parker v Title & Trust Co.,* 429 So 2d 1267 [Fla]).

However, there are cases where courts have indicated that a recorded interest is no bar to the operation of a "persons in possession" exclusion in a title insurance contract. In dicta, one court interpreted a general exception for "rights or claims not shown of record * * * if known to the [insured] at the date of this policy or at the time [the insured] acquired the title" applicable to a situation where possession was open, even if notice of the possessor's interest appeared in the title record *(Polito v Chicago Tit. & Trust Co.,* 12 Ill App 2d 57, 61, 138 NE2d 710, 712). It stated that the duty to inquire of a possessor is the purchaser's, that the purchaser is charged with whatever knowledge such an inquiry would have revealed, and that actual possession of land is notice equal to that of the possessor's recorded deed *(supra).* In another such case, the insured discussed the subject easement with the prior owner, and thus clearly knew about it *(Jupe v City of Schertz,* 604 SW2d 405 [Tex]), and in a third such case, the possessor whose claims appeared in the chain of title had grazed cattle, raised crops, and had spent weekends on the land for nearly 20 years *(Horn v Lawyers Tit. Ins. Corp.,* 89 NM 709, 557 P2d 206). Of particular interest to us here, the *Horn* court rejected *Pruett (supra)* and *Guarantee Abstract* (216 So 2d 255, *supra)* as persuasive authority, on the ground that, in the *Horn* case, the title company had no duty to search the title records, because no such duty could be expressed in or implied from the policy. The court further stated that any search of the records undertaken was done solely for the title company's own protection as indemnitor. It noted that the exception in the policy before it, unlike the exception in the *Pruett* case, was neither expressly nor impliedly limited to "rights, titles or occupancies" *not of record,* but rather the exception applied to such rights whether recorded or unrecorded.

■ We hold that a defect arising from the rights of a person whose interest appears in the chain of title must be covered unless specifically excepted, irrespective of whether notice of that interest to the insured may be implied through open

possession at the time the policy was issued. Because there was no specific exception for Robert Barbieri's interest, the more general exception for a "person in possession" is no bar to recovery.

■ We are guided by the general but well-established precept that in cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language (see, Jacobson v Sassower, 66 NY2d 991, 993). Thus, in a case involving a title insurance policy such as the one before us, " '[n]ot only the provisions of the policy as a whole, but also the exceptions to the liability of the insurer, must be construed so as to give the insured the protection he reasonably had a right to expect, and to that end doubts, ambiguities, and uncertainties arising out of the language used in the policy must be resolved in his favor' " (National Holding Co. v Title Ins. & Trust Co., 45 Cal App 2d 215, 220-221, 113 P2d 906, 909, quoting Coast Mut. Bldg.-Loan Assn. v Security Tit. Ins. & Guar. Co., 14 Cal App 2d 225, 229, 57 P2d 1392, 1393; see also, 1 NY Jur 2d, Abstracts and Land Titles, § 48).

Our decision must be based on the intent of the parties in entering into the agreement, which will be determined in accordance with the language set forth in the policy and the rules of contract construction noted above (see, Smirlock Realty Corp. v Title Guar. Co., 70 AD2d 455, 461, mod on other grounds 52 NY2d 179; Giacalone v City of New York, 104 Misc 2d 405, 409). Section 3 of Commonwealth's policy is entitled "Cases Where Liability Arises", and states, in pertinent part, that liability may arise "(a) [w]here there has been a final determination under which the insured may be dispossessed, evicted or ejected from the premises or from some part or undivided share or interest therein", and "(b) [w]here there has been a final determination adverse to the title, upon a lien or encumbrance not excepted in this policy". Because the adverse ruling upon Robert Barbieri's motion was not based upon a "lien or encumbrance" but rather on his unextinguished ownership, Commonwealth's coverage arises under (a), which is broad and contemplates any ouster from possession. Elsewhere, the policy recites that the interest insured is the fee simple vested in the plaintiffs by means of the deed dated July 1, 1983. There are no relevant limiting words. When the foregoing is read with the statutory definition of title insurance as insuring "against loss by reason of defective titles"

and "the correctness of searches for all instruments, liens or charges affecting the title" (Insurance Law § 1113 [a] [18]), we conclude that, as a general matter, the parties intended and expected that an interest which would serve to divest the plaintiffs of the property and which was not excluded by an exception would be covered.

We agree with the statement of the court in *Guarantee Abstract & Tit. Ins. Co. v St. Paul Fire & Mar. Ins. Co.* (216 So 2d 255, *supra)* that the possession exclusion stems from the practical problems associated with title examination. The title company does not want to be held responsible for some unknown person who might be able to make a claim founded on either the possession alone (i.e., adverse possession) or an instrument which would not cross the examiner's path if the public records were examined—for example, an unrecorded deed. Thus, any risk attendant to not examining the *physical property itself* is passed to the insured by way of the exception. The records, however, remain the insurer's concern, for their careful review is the essence of the title examiner's task.

In that regard, no claim has been made that the judgment roll in the foreclosure action was not properly filed by the court clerks or mishandled such that it was not available for public inspection. Robert Barbieri's ownership interest was clearly of record. The situation here is analogous to the forged deed problem presented to the court in *Parker v Title & Trust Co.* (429 So 2d 1267, *supra):* the chain of title to the insured was facially complete, but later, a break in the chain of title was established that ultimately caused a loss to the insured. The question of who bears the loss depends upon who was expected to discover any weakness in the record, and as between the purchaser and the title examiner, the latter must be charged. We can discern no reason to relieve the examiner, and ultimately the insurance company, of this responsibility, based upon an exception which is directed to a wholly different circumstance, a title problem discoverable only from an examination of the property itself. That such an inquiry by the insured might have revealed that the paper chain was not what it appeared to be does not alter an insured's reasonable expectation that he or she would be covered for a problem arising from interests created by instruments the examiners would review during a title search.

Thus, in order to exclude such coverage, a policy exception

for rights of "persons in possession" must explicitly be broadened to state that it applies even to those rights arising from recorded instruments, for only in that case would the insured be on notice that his reasonable expectation of coverage for a loss occasioned by someone asserting recorded rights might be defeated. We disagree with the contrary view of the *Horn (supra)* court that the exception for "persons in possession" applies to a possessor's recorded interests as well as those which are not recorded, subject only to an explicit limitation. Again, the purpose of the exception is to protect the title company from having to cover losses arising from either possession itself or from an instrument which would not normally appear among the papers examined during a search *(Guarantee Abstract & Tit. Ins. Co. v St. Paul Fire & Mar. Ins. Co.,* 216 So 2d 255, *supra),* which we note are perfectly understandable concerns. We do not believe, however, that a bare "persons in possession" exclusion should be read to limit coverage beyond that point.

■ Further, and although this action is brought against the title company, we note that the title examiner serves the abstract company engaged by the insured, which therefore owes a duty of care to that insured; liability can arise in the event the search is performed in a negligent manner *(see, Byrnes v Palmer,* 18 App Div 1, *affd* 160 NY 699; 5A Warren's Weed, New York Real Property, Title Insurance, §§ 3.01, 3.02 [4th ed]). We therefore have little difficulty in also rejecting the position taken in *Horn v Lawyers Tit. Ins. Co.* (89 NM 709, 557 P2d 206, *supra),* that absent language in the policy to the contrary, any search undertaken must be deemed to be made solely for the insurer's benefit.

Accordingly, we hold that the exception from coverage for "rights of tenants or persons in possession" is no bar to recovery under the policy. The judgment is therefore reversed. The Supreme Court did not reach the issue of damages, and we thus remit the matter for an assessment thereof, and entry of a judgment in favor of the plaintiffs.

BRACKEN, J. P., HARWOOD and MILLER, JJ., concur.

Ordered that the judgment is reversed, on the law, with costs, and the matter is remitted to the Supreme Court, Nassau County, for an assessment of damages, and for entry of a judgment in favor of the plaintiffs.