OPINION OF THE COURT
Walter M. Schackman, J.
This negligence and breach of contract action arises out of the performance by defendant Chicago Title Insurance Company (defendant or Chicago Title) of a title search, and its issuance of a title insurance policy to plaintiff Citibank (plaintiff or Citibank) in connection with a mortgage loan. Defendant now moves for an order granting summary judgment dismissing the negligence cause of action, and for partial summary judgment as to the breach of contract cause of action. Plaintiff cross-moves for summary judgment.
I
STATEMENT OF FACTS
In August 1986, Thomas Duke took out a mortgage from a lender known as Citytrust in the amount of $790,000 on premises located at 11 Bevin Road West, Asharoken, New York (the Premises). Sometime in 1987, Duke approached Citibank with a proposal to refinance the Citytrust mortgage. In July 1987, Duke executed and delivered to plaintiff a mortgage and modification, extension and consolidation agreement (the Agreement) consolidating (1) the $790,000 Citytrust mortgage; (2) an additional mortgage for $10,000 from Citibank; and (3) a negative amortization mortgage in the sum of $80,000 to secure deferred interest payments on the other two mortgages. All were consolidated into one lien of $880,000 (the Consolidated Mortgage).
In connection with the loan, plaintiff applied to Chicago Title for mortgage title insurance. Pursuant to plaintiff’s application, defendant issued a commitment for title insurance (the Title Insurance Commitment). On July 17, 1987, the date of closing, defendant issued a Title Policy (the Title Policy) in Citibank’s favor.
When Duke failed to make his payments under the Consolidated Mortgage, Citibank commenced foreclosure proceedings against the Premises in February 1988. As part of its prepara *284 tians, Citibank ordered a title search from Ticor Title Guarantee (Ticor). The initial title search disclosed two judgments against Duke, one in the amount of $11,978 in favor of William R Lupone, perfected June 25, 1982, and the other in the amount of $923,091.69 in favor of RK Chevrolet, Inc., perfected May 18, 1987. Both judgments appeared to have priority over Citibank’s Consolidated Mortgage that was about to be foreclosed. Subsequently, Citibank received a corrected title report from Ticor; that report disclosed that three other mortgage foreclosure actions had been filed against the Premises prior to Citibank’s July 17, 1987 closing: two in Suffolk County and one in the United States District Court, Eastern District of New York. None of the notices of pendency had been reported in Chicago Title’s report to Citibank. The Premises was sold at foreclosure to Citibank for $100,000. Citibank subsequently obtained a deficiency judgment in the amount of $919,212.59. The instant action ensued.
II
DISCUSSION
As to the first cause of action, defendant contends that it cannot be held liable for its alleged negligent preparation of the Title Insurance Commitment since all liabilities arising thereunder merged upon the issuance of the Title Policy.
Alternatively, defendant contends that it cannot be liable for its alleged negligent preparation of the Title Policy. Defendant contends that the purpose of a policy of title insurance is to provide indemnification to the insured in the event the insured suffers any losses as a result of undiscovered but discoverable defects in title only. In short, it is a contract of indemnity. Defendant contends that were plaintiff’s negligence cause of action permitted to stand, the purpose of a title policy would be perverted by making such a policy into a credit report of the borrower and/or a guarantee by the title insurer that the value of the premises was sufficient to cover the mortgage loan. Put another way, defendant contends that since a title insurance policy is a contract of indemnity, negligence is not relevant; defendant only must indemnify plaintiff for its costs in clearing up title defects. As such, any reliance by plaintiff on defendant’s issuance of the Title Policy other than for clearance of title is unreasonable.[1]
*285 As to the second cause of action for breach of contract, defendant contends that Citibank is not entitled to indemnification under the policy by reason of the alleged title defects since Citibank did not suffer any loss or damage therefrom. Defendant alleges that when Citibank purchased the property at the foreclosure sale, any alleged title defect was cleared. In any event, defendant contends that there were no defects in title, i.e., that the alleged defects in title involved liens subordinate to that of Citibank. Therefore, Citibank did not sustain any loss or damage, and partial summary judgment is warranted.* [2]
Citibank contends that the first cause of action is founded on defendant’s negligent preparation of the Title Policy and not on the Title Insurance Commitment. Citibank asserts that when defendant conducted its title search in connection with the Consolidated Mortgage, it missed the following significant matters, all of which were publicly recorded:
(a) a mortgage for $500,000 from Thomas Duke to First City National Bank and Trust Company, dated November 26, 1986 to partially secure an indebtedness by Duke of $1.5 million;
(b) a judgment lien recovered by RK Chevrolet in the sum of $923,091.69, which was an encumbrance against the real property that was to be mortgaged by Duke;
(c) a lis pendens disclosing that the Citytrust mortgage was itself being foreclosed upon; and
(d) a foreclosure action by one Alex Varveris for a mortgage alone in the amount of $150,000, as evidenced by a summons and complaint and lis pendens filed on May 1, 1987 in connection with the foreclosure action.
Citibank contends that had it been aware of the foregoing defects in title, in accordance with established industry practices, it never would have closed on the $880,000 loan. Under Citibank’s policy, if a preliminary title search report discloses outstanding encumbrances, plaintiff normally requests an ex *286 planation from the borrower to see whether or not the outstanding liens, judgments, and other encumbrances have been cleared. If any controversy remains with respect to a lien (other than one in a nominal amount), Citibank does not close on the property. Citibank contends that this view is in accord with the realities of the marketplace; when title insurers sell title insurance to mortgagees, both sides understand that the search is a key part of the bargain and that the banks rely on that search in deciding whether to make a mortgage loan. Indeed, Citibank contends that had Chicago Title known about the serious defects in the title, defendant never would have issued the Title Policy to plaintiff. Thus, Citibank sustained damages arising out of defendant’s negligence in the issuance of the Title Policy.
Further, Citibank contends that since the purpose of a title policy is, inter alla, to insure the accuracy of the title search, and defendant failed to do so by virtue of the alleged title defects, a viable cause of action for breach of contract has been stated.
The New York Court of Appeals has held that a policy of title insurance protects the insured against the risk that the property may have some defect in title (Smirlock Realty Corp. v Title Guar. Co., 70 AD2d 455 [2d Dept 1979], mod in part 52 NY2d 179 [1981]). The title insurer insures against defects in title and insures that the title search was conducted in a reasonable and diligent manner: "[U]nlike other types of insurance, the insured under a title policy provides little, if any, information to the title company other than the lot and block of the premises and the name of the prospective guarantor. Armed with this information, the title company can then search the various indices and maps to ascertain the state of title to the property. Indeed, it is because title insurance companies combine their search and disclosure expertise with insurance protection that an implied duty arises out of the title insurance agreement that the insurer has conducted a reasonably diligent search * * * This duty may not be abrogated through a standard policy clause” (supra, 52 NY2d, at 190 [citations omitted; emphasis added]). This implied duty to conduct a reasonable and diligent search arises out of the title insurance agreement itself (supra). Importantly, the title insurance company also "insure[s] the correctness of searches for all instruments, liens or charges affecting the title to such property” (supra, 52 NY2d, at 187-188; Matter of Ticor Tit. Ins. Co., 1986 FTC Lexis 1 [Dec. 22, 1986, docket No. 9190]). *287 This principle likewise is codified in section 1113 (a) (18) of the Insurance Law, which defines a policy for title insurance as: "insuring * * * against loss by reason of defective titles and encumbrances and insuring the correctness of searches for all instruments, liens or charges affecting title to such property” (emphasis added).
Based on the foregoing principles, then, defendant’s issuance of a Title Policy encompassed an implied duty by Chicago Title to conduct a reasonably diligent search and to insure the accuracy of its search. Moreover, if the purpose of procuring title insurance is to protect the insured against defects in title and to insure the accuracy of the title company’s search of the subject premises, then, "[a] prospective mortgagee [may] justifiably rel[y] upon the accuracy of the reported search * * * as to the existence of prior encumbrances [and] the amounts thereof.” (Chrysler First Fin. Servs. Corp. v Chicago Tit. Ins. Co., 156 Misc 2d 814, 819 [Sup Ct, Nassau County 1993]; Matter of Ticor Tit. Ins. Co., 1986 FTC Lexis 1 [Dec. 22, 1986, docket No. 9190], supra.)
Summary judgment is a drastic remedy which should be granted when there is no doubt as to the absence of triable issues (Rotuba Extruders v Ceppos, 46 NY2d 223 [1978]; Andre v Pomeroy, 35 NY2d 361 [1974]) since it is "the procedural equivalent of a trial” (Falk v Goodman, 7 NY2d 87, 91 [1959]). To succeed on a motion for summary judgment: "The proponent * * * must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case (see, Zuckerman v City of New York, 49 NY2d 557, 562; Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404). Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers.” (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985] [citations omitted].)
Moreover, the court should draw all inferences from the evidence favorable to the party opposing the motion (Citibank v Dutka, 74 AD2d 520 [1st Dept 1980]).
The first cause of action of the amended complaint appears to be grounded upon defendant’s alleged negligence in the issuance of the Title Policy insuring against title defects. Under New York law, defendant’s issuance of the Title Policy encompassed an implied duty by Chicago Title to conduct a reasonably diligent search and to insure the accuracy of the *288 search. Assuming that the Premises did contain the four defects in title, such defects are sufficient to support Citibank’s claims for negligence (Herbil Holding Co. v Commonwealth Land Tit. Ins. Co., 183 AD2d 219 [2d Dept 1992]), and breach of contract.
The only issue remaining, other than damages, which must await a trial, is whether the admitted defects in the title search and subsequent policy would in fact have prevented Citibank from issuing the mortgage. There can be no question that lenders rely on the work of title insurance companies in order to proceed to close a loan. Defendant has not refuted the affidavit of Citibank that states the obvious, that the loan would not have been closed, as it did, if the title search and policy had not been defective. No clearer statement of the expectations of a mortgage lender with respect to title insurance can be found than in Ticor Tit. Ins. Co. v Federal Trade Commn. (922 F2d 1122, 1127 [3d Cir 1991], revd and remanded on other grounds 504 US 621 [1992]): "Potential purchasers of real estate and their lenders desire to know before purchasing or financing a purchase of property whether the title has any preexisting defects. Once such defects are discovered, the purchasers and lenders can determine whether to continue with the deal as is, whether to demand cure of certain or all of the defects or whether to call off the deal.”
In this case, the amounts of the encumbrances were so high and the priority of lien so unclear that the loan would not have closed.
The court notes that the Second Department’s decision in Smirlock (supra) does not lead to a contrary result. In that decision, the Appellate Division found that where a negligence action is based on a commitment issued by the title insurance company and the commitment contains a merger clause, no liability arises out of the commitment. This is especially true when no public policy reason exists to deny enforcement of the merger clause. In the instant action, Citibank seeks to impose liability under the Title Policy. Such an action is consistent with the title insurer’s implied duty to conduct a reasonably diligent search, its duty to insure the accuracy of its search, and public policy.
Similarly, this court’s decision in Charney v Commonwealth Land Tit. Co. (Sup Ct, NY County, Feb. 1994, Schackman, J., index No. 103985193) does not mandate a contrary result. In Charney, plaintiff asserted a negligence claim based upon the *289 title commitment and the title policy. This court determined that a merger clause barred any action under the title commitment. As to the action under the title policy, the Charney plaintiff conceded that the title insurance company had conducted an appropriate title search. In contrast, the crux of plaintiff’s complaint in this action is that defendant did not conduct an appropriate title search.
Accordingly, defendant’s motion for summary judgment and partial summary judgment is denied and plaintiff’s cross motion for summary judgment is granted. The attorneys are to contact the Part Clerk for a date for an assessment of damages after the filing of a note of issue.

. Defendant also contends that the first cause of action is barred by the *285 Statute of Limitations. However, Citibank contends, and this court agrees, that since defendant’s president represented to Citibank that it should wait until after the foreclosure proceedings were completed in order to ascertain if any loss would be incurred, defendant is estopped from asserting a Statute of Limitations defense to plaintiff’s negligence claim. Defendant does not seriously dispute Citibank’s estoppel argument.

. Since the Title Policy obligates defendant to pay for plaintiffs attorney’s fees in resolving any title defects, defendant only seeks partial summary judgment on the second cause of action.