[600 NYS2d 723]

LILLIAN MANNINO, Respondent, v AGWAY, INC. GROUP TRUST, Defendant, and BLUE CROSS AND BLUE SHIELD OF CENTRAL NEW YORK, INC., Appellant.

Second Department, July 19, 1993

### APPEARANCES OF COUNSEL

*Bond, Schoeneck & King,* Syracuse *(Jonathan B. Fellows* of counsel), for appellant.

*Ciarelli & Dempsey,* Melville *(John L. Ciarelli* of counsel), for respondent.

### OPINION OF THE COURT

BRACKEN, J.

The Supreme Court granted summary judgment in favor of the plaintiff, Lillian Mannino, and declared that the defendant Blue Cross and Blue Shield of Central New York, Inc., is obligated to indemnify her against all costs related to a bone marrow transplant which was needed in order to treat a disease, i.e., leukemia, which she had contracted before the effective date of the defendant's health insurance policy. The appellant, on appeal, argues that the plaintiff's leukemia was a "pre-existing condition" within the meaning of an exclusionary clause contained in the governing health insurance policy, and that summary judgment should instead have been granted to it. We affirm.

I

On June 1, 1990, the appellant Blue Cross and Blue Shield of Central New York, Inc., entered into an insurance agreement with Joseph Mannino, an enrollee in a group health insurance plan sponsored by Mr. Mannino's employer, Agway, Inc. There is no dispute that by virtue of this agreement the plaintiff, Lillian Mannino, obtained health insurance coverage effective June 1, 1990.

On April 3, 1990, approximately two months before the effective date of the health insurance policy under review in this case (June 1, 1990), the plaintiff visited Dr. Robert Semlear. She complained of pain in her abdomen and told Dr. Semlear that she had been urinating frequently. Dr. Semlear drew a blood sample and planned a more comprehensive examination for a later date. The results of this blood test showed an elevated white blood cell count of 19,200.

On May 25, 1990, six days before the effective date of the policy, the plaintiff returned to Dr. Semlear. At this time, Dr. Semlear drew a second blood sample. Analysis of this sample indicated a white blood count of 20,600. Dr. Semlear then advised the plaintiff to consult another physician, Dr. Louis J. Avvento. There is no proof that the problems about which the plaintiff was complaining (frequent urination, abdominal pains) were symptoms of leukemia.

According to the plaintiff's affidavit in support of her motion, "Dr. Semlear made no mention of any possible diagnosis of an illness from which he thought [she] was suffering". In his affidavit, Dr. Semlear stated that on May 25, 1990, he referred the plaintiff to Dr. Avvento, "without conducting a physical examination, making any diagnosis of a possible illness, or giving any medical advice related to leukemia, or recommending any treatment for this illness or its symptoms". He also stated, "I did not, at any time, give any medical advice related to leukemia to [the plaintiff], nor did I provide nor [sic] recommend any treatment for this illness or its symptoms".

On May 31, 1990, one day before the effective date of the policy, the plaintiff saw Dr. Avvento. In his affidavit, Dr. Avvento stated, "[m]y impression after [the plaintiff's] first visit on May 31, 1990 was a leukocytosis of undetermined etiology". Dr. Avvento advised the plaintiff to undergo a bone marrow aspiration and biopsy, as well as a chromosome study. Dr. Avvento also stated that, as of his examination of May 31, 1990, the plaintiff was "asymptomatic".

As noted above, the group insurance policy under review in this case went into effect on June 1, 1990, one day after Dr. Avvento had advised the plaintiff to undergo these additional tests.

On June 7, 1990, a bone marrow aspiration and biopsy was performed. According to Dr. Avvento, "[t]he results * * * were highly suggestive of a myeloproliferative disorder such as

chronic myeloid leukemia". This presumptive diagnosis was confirmed by the results of the chromosome analysis, which were reported on July 3, 1990. The chromosome analysis of the bone marrow aspiration "detected the classic Philadelphia chromosome molecular rearrangement known as BCR rearrangement". A "definitive diagnosis of chronic myelogenous leukemia" was thus made for the first time on July 3, 1990.

Dr. Avvento averred, in support of the plaintiff's motion, "I did not give any medical advice related to leukemia to [the plaintiff] before June 1, 1990, nor did I provide nor recommend any treatment for this illness or its symptoms prior to that date". The plaintiff thereafter sought treatment for her disease and this treatment included a proposed bone marrow transplant. The appellant refused to provide coverage for this procedure, claiming that the plaintiff's condition was "pre-existing". The Supreme Court concluded that the plaintiff had demonstrated her entitlement to coverage as a matter of law, and this appeal followed.

## II

The text of the exclusionary clause at the center of the parties' dispute in this case provides as follows: "3. *Pre-existing conditions.* You have to wait 11 months * * * before we will cover services for pre-existing conditions. A pre-existing condition is one for which medical advice was given, treatment was recommended by or received from a health care provider * * * within 12 months before you were covered by this contract". As will be detailed below, we find that there are three sources of ambiguity in this clause.

## A

The first source of ambiguity in the appellant's "pre-existing conditions" clause is syntactical. A reader of this clause might conclude that the exclusion applies only if, within the 12 months prior to the effective date of the policy, the insured person had received *both* medical "advice" *and* medical "treatment" (or a recommendation as to treatment). On the other hand, one might just as easily conclude that the exclusion applies only if, within the 12 months prior to the effective date of the policy, the insured person had received *either* medical "advice" *or* medical "treatment" (or a recommendation as to treatment). The language of the exclusionary clause lends itself to both of these interpretations because two of the

terms essential to the definition of a "pre-existing condition", that is, the term "medical advice" and the term "treatment", are juxtaposed without the mediation of a conjunction (either "and" or "or") necessary in order to define their syntactical relationship.

This grammatical problem would be of no consequence, except that the chronology of the events of this case, outlined above, might lead one to conclude that the plaintiff was an insured person who *did* receive medical "advice" prior to June 1, 1990, but who did *not* receive either medical "treatment" or a recommendation as to "treatment" until after June 1, 1990. It is clear that prior to June 1, 1990, both Dr. Semlear and Dr. Avvento were concerned with the plaintiff's abnormal blood test results. Dr. Semlear advised the plaintiff to see Dr. Avvento. Dr. Avvento advised the plaintiff to undergo further tests. This being the case, we conclude that both these physicians gave medical "advice" to the plaintiff prior to June 1, 1990. Whether they gave medical "treatment" as well is a different question.

The case of *Bergan v Time Ins. Co.* (196 Ga App 78, 395 SE2d 361) is illustrative. In that case, the plaintiff had undergone a pelvic ultrasound examination prior to the effective date of a group health insurance policy. Also, a physician had advised her to " 'seriously consider' undergoing an exploratory laparotomy 'to evaluate * * * and if possible, cure the problem' " *(Bergan v Time Ins. Co., supra,* 196 Ga App, at 79, 395 SE2d, at 362). It was not until after the effective date of the policy that a laparotomy was performed, revealing low grade cancer of the ovaries.

In holding that the plaintiff was excluded from coverage for the costs of treating this disease, the court applied the literal terms of the governing policy, which excluded coverage for preexisting conditions. The term "preexisting condition" was defined as "an illness or injury for which medical care, treatment, medicine or advice was received during the six-month period immediately prior to the effective date" *(Bergan v Time Ins. Co., supra,* 196 Ga App, at 79, 395 SE2d, at 362). Acknowledging that the plaintiff may not have received "treatment", the court concluded that she had received "advice" in the sense that she had been given and had accepted " 'an opinion or recommendation offered as a guide to action, conduct, etc.' " *(Bergan v Time Ins. Co., supra,* 196 Ga App, at 80, 395 SE2d, at 363, citing Random House Dictionary of the English Language [2d ed 1987]).

■ The terms of the policy at issue in *Bergan v Time Ins. Co. (supra)* serve as an instructive contrast to the terms of the policy now under review. In *Bergan,* as here, the terms "treatment" and "advice" are essential to the definition of the term "pre-existing condition". In *Bergan,* however, those terms were separated by the disjunctive conjunction "or", so that the meaning of the exclusionary clause was unambiguous *(see also, Fischman v Blue Cross & Blue Shield,* 775 F Supp 513). In the present case, the language of the exclusionary clause is ambiguous and can be interpreted in such a way as to exclude coverage only in those cases where the insured was actually treated (or given a recommendation as to treatment) before the effective date of the policy. Since this is the construction of the clause which is most favorable to the insured, it is the construction which must be applied *(e.g., Continental Cas. Co. v Rapid-Am. Corp.,* 80 NY2d 640, 655; *Lavanant v General Acc. Ins. Co.,* 79 NY2d 623, 629; *Herbil Holding Co. v Commonwealth Land Tit. Ins. Co.,* 183 AD2d 219, 226).

## B

The second source of ambiguity in the appellant's "pre-existing conditions" exclusion is definitional in nature. The clause applies so as to exclude coverage for the costs of treating a "condition" only if "advice" had been given and "treatment" had either been given or recommended *for* the particular "condition" in question. Any advice or treatment which is given in the interests of good health generally (lose weight, stop smoking), but for no particular "condition", cannot serve to limit coverage under the "pre-existing conditions" clause. If "condition" is equated to "disease", then it is arguable that any treatment or advice rendered prior to a diagnosis could not be considered as having been given *for* that condition.

The case of *Scarborough v Aetna Life Ins. Co.* (572 SW2d 282 [Tex], *revg* 556 SW2d 109 [Tex Civ App]) is illustrative. In that case, the plaintiff underwent a pap smear and a gynecological examination which revealed an abnormality in her ovarian function. This occurred before the effective date of the applicable policy. The Texas courts held that the performance of this diagnostic test constituted "treatment" within the meaning of the governing policy *(see also, Provident Life & Acc. Ins. Co. v Hutson,* 305 SW2d 837 [Tex Civ App] [treatment includes exploratory diagnostic procedures]; *Mutual Life Ins. Co. v Bohannon,* 488 SW2d 476 [Tex Civ App]).

In *Scarborough v Aetna Life Ins. Co. (supra)*, the plaintiff's disease was not actually diagnosed until after the effective date of the policy. The intermediate Texas Court of Civil Appeals concluded that this was irrelevant and held that the plaintiff was excluded from coverage because she had in fact been "treated" for the symptoms of the yet-to-be-diagnosed *disease* before the policy took effect. The Supreme Court of Texas reversed, holding that while the plaintiff might have had her symptoms treated before the effective date of the policy, this treatment had not been received "for [her] condition". The court stated that "for the exclusion to apply it is necessary that the insured received a medical service * * * directed toward a known condition" *(Aetna Life Ins. Co. v Scarborough, supra,* 572 SW2d, at 284), thus suggesting that the term "condition" is equivalent to "disease".

The term "condition" might also be taken in a broader sense. The term condition might be specifically defined in a health insurance policy so as to include any "physical condition which exhibits symptoms * * * regardless of * * * whether the patient knows the medical explanation for the abnormal functioning" *(see, State [Comprehensive Health Plan] v Carper,* 545 So 2d 1, 1-2 [Miss]). In other words, a symptom or group of symptoms, the underlying cause of which has not yet been identified, might be considered a "condition" even though no actual disease has been diagnosed.

Many health insurance policies, unlike the one under review, define "pre-existing condition" in terms of when an illness or condition is first "manifest" and in construing such policies, the courts generally hold that an illness or condition "manifests" itself whenever the insured experiences such symptoms as would cause an ordinarily prudent person to seek medical advice *(see, e.g., Massachusetts Cas. Ins. Co. v Forman,* 516 F2d 425, *cert denied* 424 US 914; *McDaniel v State Farm Mut. Ins. Co.,* 3 Kan App 2d 174, 591 P2d 1094; *State [Comprehensive Health Plan] v Carper, supra,* at 3; *Cardamone v Allstate Ins. Co.,* 49 Ill App 3d 435, 364 NE2d 460; *American Family Ins. Group v Blake,* 439 NE2d 1170, 1173-1174 [Ind]; *Mutual Hosp. Ins. v Klapper,* 153 Ind App 555, 288 NE2d 279; *Rozek v American Family Mut. Ins. Co.,* 512 NE2d 232, 236 [Ind]; *Preferred Risk Life Ins. Co. v Sande,* 421 So 2d 566 [Fla]; *but see, Continental Cas. Co. v Robertson,* 245 F2d 604; *Buckner v American Natl. Ins. Co.,* 117 Ga App 633, 161 SE2d 319 [disease is not manifest unless there is clear diagnosis]). Such symptoms must be such that "one

learned in medicine [could] with reasonable accuracy diagnose the disease" *(Craig v Central Natl. Life Ins. Co.,* 16 Ill App 2d 344, 355, 148 NE2d 31, 36 citing Annotation, 53 ALR2d 686, 689; *National Cas. Co. v Hudson,* 32 Ala App 69, 21 So 2d 568; *Union Bankers Ins. Co v May,* 227 Miss 881, 87 So 2d 264; *see also, Southards v Central Plains Ins. Co.,* 201 Kan 499, 441 P2d 808; *State Natl. Life Ins. Co. v Stamper,* 228 Ark 1128, 312 SW2d 441; *Horace Mann Mut. Ins. Co. v Burrow,* 213 Tenn 262, 373 SW2d 469; *Dirgo v Associated Hosps. Serv.,* 210 NW2d 647 [Iowa]; *Mogil v California Physicians Corp.,* 218 Cal App 3d 1030, 267 Cal Rptr 487; Annotation, *Health Policy—Exhaustion of Prior Illness,* 94 ALR3d 990; 43 Am Jur 2d, Insurance, § 1206 [1969]; 45 CJS, Insurance, § 893 [1946]; Meyer, Life and Health Insurance Law § 17:6).

Although, as noted above, the plaintiff definitely received medical advice prior to the effective date of this policy, it was not given *for* an actual disease, because no disease had yet been diagnosed. Moreover, this advice was not given for any symptom of the disease for which the plaintiff now seeks coverage. Dr. Semlear's initial testing was in response to complaints of symptoms (urinary frequency, abdominal pain) which are not distinctly related to leukemia; Dr. Semlear's and Dr. Avvento's later tests were prompted by the abnormal results of the first blood test, but the plaintiff was at this time still "asymptomatic", that is, free of symptoms distinctly tied to leukemia. Prior to the effective date of this policy, neither doctor had before him proof of symptoms which would permit a diagnosis of leukemia with reasonable accuracy.

■ We therefore conclude that, whether the term "condition" is defined more narrowly, so as to mean an actually diagnosed "disease", or more broadly, so as to mean any distinct symptom of the still-to-be-diagnosed disease for which coverage is sought, the fact remains that, in this case, the medical advice given to the plaintiff prior to the effective date of the policy was given neither for leukemia nor for any symptom distinctly related to leukemia. Neither the physical symptoms exhibited by the plaintiff prior to the effective date of the policy, nor the test results obtained prior to the effective date of the policy, would have permitted a physician to make a reasonably accurate diagnosis of leukemia. In short, the plaintiff received no medical advice for the same "condition" (leukemia) for which she now seeks health insurance coverage.

## C

The third ambiguity in the "pre-existing conditions" clause of the appellant's health insurance policy is the one inherent in the term "treatment".

"Treatment" can be defined broadly, so as to encompass not only the rendering of medical services designed to alleviate pain or suffering, but also the rendering of medical services designed to investigate the cause of a particular symptom. In other words, as held in the Texas cases noted above *(Scarborough v Aetna Life Ins. Co., supra; Provident Life & Acc. Ins. Co. v Hutson, supra),* the term "treatment" can encompass diagnostic procedures as well. This is the definition adopted in several other cases *(see, e.g., Lucito v Louisiana Hosp. Serv.,* 392 So 2d 700 [La]).

However, there are also cases which recognize that the term "treatment" can be more narrowly defined. In *Modern Woodmen v Miles* (178 Ind 105, 97 NE 1009 [Ind]), the court held that the prescription of an analgesic for a headache was not "treatment" because the physician was merely relieving a symptom, rather than curing a specific disease *(see also, Indiana Comprehensive Health Ins. Assn. v Dye,* 531 NE2d 505 [Ind App]; *Mutual Life Ins. Co. v Bishop,* 132 Ga App 816, 209 SE2d 223; *Beggs v Pacific Mut. Life Ins. Co.,* 171 Ga App 204, 318 SE2d 836; *Franceschi v American Motorists Ins. Co.,* 852 F2d 1217 [diagnostic testing not "treatment"]). "Treatment, as commonly understood, occurs when a health care provider takes steps to remedy or improve a malady that caused the patient to seek [the provider's] help" *(Shanks v Blue Cross & Blue Shield United,* 979 F2d 1232, 1233).

■ Once again, this ambiguity must be resolved in favor of the plaintiff. We, therefore, conclude that the term "treatment" does not include diagnostic testing, but applies only to medical services designed to alleviate a disease, illness, or a symptom thereof.

## III

■ For the foregoing reasons, we conclude that the exclusionary clause under review in the present case applies only in the event that (1) during the 12-month period prior to the effective date of the policy, the insured receives both medical advice and medical treatment (or a recommendation as to treatment), (2) such advice and treatment (or a recommendation as to treatment) is related to the actual disease or illness

for which the insured is seeking indemnification, or to a symptom distinctly related to that disease, and (3) such advice and treatment or recommendation of treatment includes the rendering or recommendation of medical services designed to alleviate such disease, illness, or symptom. Applying these standards to the facts of the present case, we conclude that the plaintiff received no treatment (or recommendation as to treatment) either for leukemia, or for any symptom based upon which a diagnosis of leukemia could have been made with reasonable accuracy, prior to the effective date of the policy. Accordingly, the exclusionary clause is inapplicable.

We have examined the appellant's remaining contention and find it to be without merit. The order and judgment appealed from is therefore affirmed.

MANGANO, P. J., SULLIVAN and LAWRENCE, JJ., concur.

Ordered that the order and judgment is affirmed, with costs.