OPINION OF THE COURT
John T. Buckley, J.
This is an action for payment of medical bills pursuant to a contract of health care insurance. Faye Bunk was a covered person under a medical and hospital insurance policy purchased from the defendant on November 11, 1993 and effective as of December 1, 1993 except with respect to any "pre-existing condition” for which there existed a 330-day waiting period. Plaintiff, diagnosed with Burkitt’s lymphoma on December 8th, was denied coverage upon a claim by defendant that her treatment was for an excluded preexisting condition. Defendant has moved for summary judgment based upon the preexisting condition exclusion; plaintiff has cross-moved for summary judgment. After receiving various written materials, the court entertained oral argument on May 13, 1996.
*418 CPLR 3212 authorizes this court to grant summary judgment in favor of the moving party if it is satisfactorily demonstrated that there are no disputed issues of material fact which would preclude awarding the movant the relief for which a prima facie claim or defense has been made. Although as a method of accelerated judgment such a technique deprives the opponent of trial, the Court of Appeals has underscored the need for judicial economy and the rights of other litigants since "when there is no genuine issue to be resolved at trial, the case should be summarily decided, and an unfounded reluctance to employ the remedy will only serve to swell the Trial Calendar and thus deny to other litigants the right to have their claims promptly adjudicated.” (Andre v Pomeroy, 35 NY2d 361, 364 [1974].)
Summary judgment is the "procedural equivalent of a trial” (Falk v Goodman, 7 NY2d 87, 91 [1959]), and, as such, summary judgment is a "drastic remedy” and should not be granted where there is any doubt as to the existence of a triable and "bona fide” issue of fact. (Rotuba Extruders v Ceppos, 46 NY2d 223, 231 [1978].) When movant has made a prima facie showing which demonstrates that summary judgment is warranted, it is then incumbent upon the opposing party to show by evidentiary facts that a claim is real and can be established at trial. (Zuckerman v City of New York, 49 NY2d 557, 562-563 [1980]; Indig v Finkelstein, 23 NY2d 728 [1968]; Borrman v Bogold, 229 AD2d 949.) "The purpose of the motion is to sift out evidentiary facts and determine from them whether an issue of fact exists. As such, the testimony of the nonmoving party appellant must be accepted as true and a decision on the motion must be made on the version of the facts most favorable to her.” (Strychalski v Mekus, 54 AD2d 1068, 1069 [4th Dept 1976].) This court is not supposed to determine any facts at this stage of litigation but rather ascertain that there exist material disputes of fact. This court is to find issues, not facts.
Mindful of the foregoing, the court has carefully reviewed the parties’ submissions which reveal that there exists no dispute over any material fact; the dispute involves the interpretation and application of a contract clause. If the preexisting condition exclusion does not apply to Mrs. Bunk, the defendant is responsible for providing coverage under the contract. If the preexisting condition exclusion is given effect by this court, the defendant will be granted summary judgment and Mrs. Bunk will have no recourse under her health insurance *419 contract. The court has been asked to ascertain whether the "pre-existing condition” exclusion contained in defendant’s health insurance policy bars plaintiff’s reimbursement for otherwise covered health care expenses. Coverage or exclusion under an insurance contract is a dispute particularly and appropriately suited for resolution by the court as a matter of law. (Mannino v Agway Group Trust, 192 AD2d 131 [2d Dept 1993]; see also, Hartford Ins. Co. v Halt, 223 AD2d 204 [4th Dept 1996].)
Although counsel for the parties characterize the chronology somewhat differently, the essential facts which emerge from the affidavits are undisputed. Faye Bunk was diagnosed with Hodgkin’s disease and successfully treated in 1988 with chemotherapy and radiation by Dr. Levy of New Haven, Connecticut. George Bunk became self-employed in 1992 and early in November of 1993 obtained a medical and hospital insurance policy from the defendant. Faye Bunk went to the Little Falls Hospital emergency room on November 20th complaining of pain from a back problem unrelated to Burkitt’s lymphoma. On November 29th, Faye Bunk went to her treating physician who assessed her as suffering from abdominal and back pain which he believed traceable to many possibilities, none of which were Burkitt’s lymphoma or Mrs. Bunk’s prior disease. On December 1st and 2nd, Faye Bunk’s treating physician dealt with her complaints of persisting pain and she was advised to increase her medication and use suppositories for constipation. On December 4th, she was admitted to the Little Falls Hospital and was treated for constipation while she was being evaluated. On December 6th, a CT scan revealed a condition "consistent with Hodgkin’s disease” and she was admitted to Yale New Haven Hospital on December 8th where a diagnosis of Burkitt’s lymphoma was made. Prior to December 1st, Mrs. Bunk was not diagnosed as having Burkitt’s lymphoma, had no symptom specific to Burkitt’s lymphoma and was not treated for Burkitt’s lymphoma.
The Blue Cross and Blue Shield comprehensive contract contains a "waiting period” for "pre-existing conditions” which is defined as follows: "With the exception of benefits for services in connection with pregnancy and complications (paragraph A above), you must wait 330 days before benefits are available for services in connection with any disease, illness, ailment, or other condition where, within 6 months before your coverage under contract began:
"Medical or surgical advice or treatment was received or suggested; or
*420 "You had symptoms that would usually cause a prudent person to seek medical or surgical advice or treatment, even if you did not seek it.”
Although the defendant appeared to rely upon the "prudent person with a symptom” clause in the initial motion papers, the defendant correctly recognized in its memorandum of law that this dispute does not involve that clause since Mrs. Bunk actually sought out medical treatment. There is no claim, much less evidence in this record, which would support a view that Mrs. Bunk had symptoms other than those which are reflected in the records or statements of her treating physician, Little Falls Hospital, or her treating oncologist. Mrs. Bunk experienced back and abdominal pain in the latter part of November and appropriately sought out medical advice and treatment. The question now is whether Mrs. Bunk is trying to obtain insurance coverage in connection with any disease, illness, ailment, or other condition for which she either received or had suggested medical or surgical advice or treatment within six months before her coverage under contract began on December 1, 1993.
Before further analysis of Mrs. Bunk’s claim or Blue Cross and Blue Shield’s defense as applied to the facts of this case, it is necessary to briefly consider the evolution of New York law with respect to preexisting conditions. Despite defendant’s characterization of the current State statute as evidence of "legislative recognition of the grammatical gymnastics applied by the courts”, the case law is straightforward and the legislative enactment clear.
Insurance Law § 3232 provides in pertinent part:
"Every individual health insurance policy and every group or blanket accident and health insurance policy issued or issued for delivery in this state which includes a pre-existing condition provision shall contain in substance the following provision or provisions which in the opinion of the superintendent are more favorable to the individuals, members of the group and their eligible dependents * * *
"(b) No pre-existing condition provision shall exclude coverage for a period in excess of twelve months following the effective date of coverage for the covered person and may only relate to conditions manifesting themselves in symptoms * * * for which medical advice, diagnosis, care or treatment was recommended or received during the six months immediately preceding the effective date of coverage”.
This amended statute, for which no legislative history has been provided by either party and which appears to be *421 without judicial gloss, evidences legislative intent to permit preexisting condition clauses which are restricted in scope and thus favorable to individuals. Subdivision (b) only permits exclusion for conditions which have "manifested” in symptoms and for which advice, diagnosis, care or treatment was recommended or received. As a matter of a common sense reading of this statute, it is clear that there must be a connection between the symptoms and the condition.
Pain can be caused by any one of hundreds of conditions. Pain can develop gradually or erupt suddenly. Pain can be experienced as an accurate reflection of the situs of trauma or as a clue of a condition unrelated to location. Conditions can occur serially or concurrently. Pain can be ambiguous or specific. This statute permits exclusion of coverage only when symptom is caused by condition. No grammatical or logical gymnastics are required to apprehend or appreciate this causality nexus. This court is not free to apply its own notions of whether Mrs. Bunk should have coverage or whether sound public policy would dictate that Blue Cross and Blue Shield prevails in this dispute. This court will enforce the agreement between the parties. The statute and the contractual relationship between the parties provide the rules for decision. Those rules are clear. There is no ambiguity in either statute or contract which would be relevant to the dispute which arises from the facts of this case.
The most recent judicial exegesis of the preexisting condition statute in New York State has been, perhaps not unsurprisingly, claimed by both parties as providing support for their respective positions. Mannino v Agway Group Trust (192 AD2d 131 [2d Dept 1993], supra) involved construction of a preexisting condition clause different from the one in this case. The Court found three sources of ambiguity in that clause: (1) syntax (clause could be read as exclusion if patient received both advice and treatment, or exclusion if patient received either advice or treatment); (2) definition (advice or treatment for the particular condition in question would require diagnosis and not just symptoms); and (3) meaning (treatment can be broadly read to include diagnostic services or narrowly read to exclude relieving symptoms). The Mannino Court found for the insured on three separate and distinct bases, any of which could have provided a basis upon which to find that the exclusion did not apply. For that preexisting condition clause to have excluded coverage, the insured would have had to receive (1) advice and treatment (2) for the actual disease or distinct *422 symptom of such disease for which coverage is sought, and (3) the treatment had to be designed to alleviate that disease.
Given the disposition of this dispute there is no need to consider whether Blue Cross and Blue Shield’s present preexisting condition clause is fully consistent with Insurance Law § 3232 as amended subsequent to Mannino (supra). It is sufficient to observe that the current State statute has modified the law of preexisting conditions to permit exclusion if an insured has received advice or treatment. Whether or not treatment has to be designed to alleviate the disease is an issue which this court need not reach since the current amended statute clearly requires a causal nexus between symptom and condition which is glaringly absent in this case. Of course, whether treatment was designed to alleviate a disease may also reflect upon the treating physician’s contemporaneous analysis of the symptoms and the relationship, if any, of those symptoms to the disease causing them. What is clear from a plain reading of the current statute is that the mere existence of symptoms is not sufficient to exclude treatment for a condition. The symptoms must be produced by the condition. Otherwise only symptom-free insureds could survive the rigors of a preexisting condition clause. There is no statutory authority or sound logic which permits any nonspecific symptom to be used as a trigger for exclusion. There must be proof that the later-diagnosed condition produced the earlier symptoms. There must be proof of a causal nexus.
"The burden of proving that a claim falls within the exclusions of an insurance policy rests with the insurer”. (Neuwirth v Blue Cross & Blue Shield, 62 NY2d 718, 719 [1984].) "[Whenever an insurer wishes to exclude certain coverage from its policy obligations, it must do so 'in clear and unmistakable’ language” and "[a]ny such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced” and "are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction.” (Seaboard Sur. Co. v Gillette Co., 64 NY2d 304, 311 [1984].) Since the nature of the relationship between insured and insurer is contractual, "there must be a meeting of [the] minds” and the terms of the exclusionary clause must be examined from the point of view of the average policyholder. (Lachs v Fidelity & Cas. Co., 306 NY 357, 366 [1954].) The linguistic precision required by courts is derived from the unavoidable need to ascertain whether, and if so how, there was a meeting of the minds. As a matter of legislatively determined public policy, *423 preexisting condition policy exclusions are formulated in ways which are favorable to the insured and ambiguities must be read against the interests of the insurance company. (Insurance Law § 3232; White v Massachusetts Cas. Ins. Co., 96 AD2d 732 [4th Dept 1983], appeal dismissed 60 NY2d 702 [1983].)
Mrs. Bunk did not receive medical advice and treatment from her treating physician, Dr. Heald, during November of 1993, for Burkitt’s lymphoma. Her treating physician recorded her complaints of pain as arising from potential problems unconnected with her December diagnosis and he provided her with treatment accordingly. Dr. Come, defendant’s nonexamining expert who reviewed Mrs. Bunk’s medical records, believes that Mrs. Bunk sought out medical attention appropriately and that her treating physician evaluated her appropriately. Mrs. Bunk’s treating oncologist, Dr. Levy, agrees since in his opinion her lymphoma could not have been diagnosed prior to December 4, 1993.
This is not a case of misdiagnosis or belated diagnosis. (Fath v Unum Life Ins. Co., 928 F Supp 1147 [MD Fla 1996].) This is not a case where the insurer is preventing a fraudulent attempt to obtain coverage for a known and undisclosed condition. There is no reliable evidence that the Burkitt’s lymphoma manifested itself prior to December 4th. There is no evidence whatsoever that the symptoms Mrs. Bunk experienced prior to December 1st were, in fact, caused by the later-diagnosed Burkitt’s lymphoma. While there is evidence of symptoms of pain and treatment prior to December 1st, the defendant has utterly failed to demonstrate any causal nexus between those November symptoms and treatment, and the diagnosis and treatment of Burkitt’s lymphoma in December. The mere fact that nonspecific symptoms occur in close proximity to a subsequent diagnosis for a condition upon which coverage is claimed does not suffice as proof that the condition manifested itself in symptoms before the date of insurance coverage. (Pitcher v Principal Mut. Life Ins. Co., 93 F3d 407 [7th Cir 1996] [identification of breast lumps consistent with fibrocystic breast condition shortly before date of coverage does not trigger exclusion for coverage of breast cancer]; Cleary v Knapp Shoes, 924 F Supp 309 [D Mass 1996] [failure to prove that preexisting hypertension caused stroke]; Rabalais v Louisiana Health Serv. & Indem. Co., 671 So 2d 7 [La 1996] [failure to prove that symptoms were manifestation of medical condition for which coverage sought]; Hardester v Lincoln Natl. Life Ins. Co., 52 F3d 70 [4th Cir 1995] [treatment received for fibrocystic *424 disease insufficient to trigger exclusion for breast cancer].) Temporal proximity is not causal nexus.
The evidence is consistent with Mrs. Bunk’s claim that she was unaware that she had the medical problem on which she now seeks payment under her insurance contract until advised of Dr. Levy’s diagnosis after December 1, 1993. When she first approached her treating physician, she complained of abdominal pain on her left side and back, while Dr. Levy found an extensive huge mass on her right side. Dr. Levy states that Burkitt’s lymphoma is entirely different from Hodgkin’s, is characterized by very rapid growth, and may or may not produce pain. It would not be unreasonable to assume, based upon the nonspecific nature of Mrs. Bunk’s November pains, that she might have been experiencing those symptoms due to any one of a number of other diseases, illnesses, ailments or conditions other than Burkitt’s lymphoma. Regardless of any assumptions, however, defendant has failed to prove by evidence in admissible form that the symptoms experienced by Mrs. Bunk in November were in fact a manifestation of Burkitt’s lymphoma. In reaching this conclusion, the court is not relying upon the lack of a diagnosis or the subsequent date of the diagnosis. What is missing is any nexus between symptom and condition as required by the statute and the contractual exclusion upon which defendant relies and which reflects the agreement between the parties. (See, Fischman v Blue Cross & Blue Shield, 775 F Supp 513 [D Conn 1991].)
The defendant’s medical expert categorically states that he has no doubt in his mind that Mrs. Bunk suffered from non-Hodgkin’s lymphoma prior to December 1, 1996. This court is not bound by Dr. Gome’s expert opinion. There is no apparent or suggested reason to discredit or disbelieve Mrs. Bunk’s treating oncologist. Wfliile this court would have a tendency to give greater weight to the expert opinion of a treating oncologist, the defendant has the burden of proving the causal nexus between symptom and condition.
Dr. Gome’s expert opinion is based upon the complaints and medical treatment which he says demonstrate symptoms consistent with and related to the ultimate diagnosis. Mrs. Bunk’s complaints and medical treatment prior to December 4, 1993 were also consistent with and related to other diagnoses. Prior to December 4th Mrs. Bunk complained of abdominal and back pain. No expert opinion is required to conclude that such complaints were nonspecific. Mrs. Bunk’s treating physician did not provide her with medical treatment "consistent with” *425 or "related to” Burkitt’s lymphoma when he advised her to take laxatives, suppositories and enemas. Mrs. Bunk’s treating physician could not have provided her with medical treatment "consistent with” or "related to” Burkitt’s lymphoma since he did not even suspect that she had a medical problem of such scope or gravity. Whether viewed subjectively (Dr. Heald’s consciousness of Mrs. Bunk’s condition) or objectively (the documented signs and symptoms of Mrs. Bunk’s condition) Dr. Gome’s expert opinion does not have any evident or apparent basis or foundation in fact. The common law imposed an objective test to determine whether a condition has become "manifest”; there must exist " ' "distinctive symptoms * * * from which a reasonably accurate medical diagnosis could be made” ’ ” by a physician. (Mogil v California Physicians Corp., 218 Cal App 3d 1030, 1036, 267 Cal Rptr 487, 490 [1990].) By either subjective or objective measure, Mrs. Bunk’s condition had not become manifest prior to December 1st. While Dr. Come merely offers his expert but unsupported opinion, Dr. Levy’s affidavit specifically addresses the complaints, treatment, symptoms and diagnoses of Mrs. Bunk during November and December of 1993 in such a fashion as makes it clear to this court that she did not have a "pre-existing condition” which would require a waiting period as claimed by the defendant.
In reviewing the affidavits and arguments, the court finds no support for the inference repeatedly drawn by defendant that Faye Bunk knew that she had the disease, illness, ailment or condition prior to December 1, 1993 on which she later sought payment. Mrs. Bunk experienced pain and sought out medical treatment "appropriately” as Dr. Come observed. Whatever ailment or ailments caused Mrs. Bunk the pain she experienced in November of 1993, in the opinion of her treating oncologist, the diagnosis of Burkitt’s lymphoma could not have been made prior to December 4, 1993 and she received no medical or surgical advice or treatment for that condition or any related condition until after that date.
For the foregoing reasons, after considering the material identified in the Appendix and hearing the arguments of counsel and due deliberation having been had, it is hereby ordered that defendant’s motion for summary judgment is denied in its entirety, and it is further ordered that plaintiffs’ motion for summary judgment is granted in its entirety.