108 F.3d 1370
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Patricia A. MAHARAN, Plaintiff-Appellee,
v.
Donald T. MAHARAN, Plaintiff-Counter-Defendant-Appellee,
v.
BERKSHIRE LIFE INSURANCE COMPANY,
Defendant-Counter-Claimant-Appellant.
 No. 96-9258.
 United States Court of Appeals, Second Circuit.
 March 24, 1997.
 
 Appearing for Appellant: Paul K. Stecker, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, New York.
 Appearing for Appellees: Lawrence A. Schulz, Orchard Park, New York.
 Present Honorable FEINBERG, CARDAMONE and WINTER, Circuit Judges.
 
 SUMMARY ORDER
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Western District of New York and was argued.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby affirmed.
 
 
 3
 Berkshire Life Insurance Company appeals from a judgment in favor of Patricia and Donald Maharan after a trial before Judge Curtin. Judge Curtin found Berkshire liable to the Maharans for the full value of a disability insurance policy, less $10,000 already paid, plus accrued interest.
 
 
 4
 In 1987 and 1988, Berkshire issued three policies of disability insurance to Maharan, a well-regarded architect residing in Buffalo, New York. After being diagnosed with major depression and bipolar disorder in 1992, Maharan filed a disability claim. Berkshire made an initial payment of $10,000 to Maharan, but later disclaimed coverage. Maharan subsequently filed this action against Berkshire for breach of contract. On appeal, Berkshire claims that Maharan submitted an untimely notice of his disability, misrepresented his income when taking out the policies, and was not covered for bipolar disorder.
 
 
 5
 The policies' notice provisions require that Berkshire "receive written notice of claim within twenty days after the occurrence or start of any loss covered by the policy; if this is not possible, notice must be received as soon after the start of such loss as is reasonably possible." Crediting the Maharans' psychiatric testimony, the district court found that it was not possible for Maharan to notify Berkshire of his depression twenty days after its first occurrence in 1990 because he was unaware of the cause of his disability--clinical depression--until it was diagnosed on July 8, 1992. Maharan v. Berkshire Life Insurance Co., No. 93-CV-135C (W.D.N.Y. Aug. 28, 1996), at 17-21. The court further found that Maharan's notification to Berkshire a few weeks after diagnosis was reasonable in light of all the circumstances. Id. Appellant misstates the district court's holding in claiming that the court held "that Maharan was not required to comply with the 20-day notice of claim requirement until he consciously understood that he was disabled." What the policies state and what the court found was that Maharan was not required to comply with the twenty-day notice provision because it was not possible for him to file a claim within twenty days of the onset of the illness. That being the case, the policies required only that he file a claim as soon as was reasonably possible. Based on the facts before it, the district court found that the reasonableness requirement was met. We see no error in that ruling.
 
 
 6
 Berkshire next claims that Maharan materially misrepresented his annual income in applying for the policies, and that it would not have issued the policies had it known of his actual earnings. In arguing that the misrepresentation was material as a matter of law, Berkshire fails to address the court's factual finding that Maharan simply never misrepresented his income. In light of the large, multi-million dollar architecture projects that Maharan was then handling, the court found his estimates of future income to be reasonable. Id. at 22-23. As a self-employed architect, Maharan's statements regarding future income were understandably subject to some uncertainty. Moreover, the court found that Berkshire's extensive investigatory procedures preclude it from claiming that it did not have accurate information on which to base its underwriting decision. Prior to issuing Maharan the policies, Berkshire hired Equifax Services to investigate and verify Maharan's financial status, and also conducted its own "Personal Survey," which indicated that Maharan's salary "varies under $100,000." These factual findings are not clearly erroneous.
 
 
 7
 Finally, Berkshire claims that the district court erred in finding Maharan's policies valid at the onset of his disability. In April, 1989, Maharan was treated for a peptic ulcer and two alcohol withdrawal seizures. Berkshire claims that between April, 1989 (when Maharan was treated for alcoholism-related problems) and March, 1990 (when the district court found that Maharan was disabled due to depression), each of his policies lapsed and was reinstated on one or more occasions after he failed to pay premiums within a thirty-one day grace period. Like pre-existing condition policy exclusions, Berkshire's reinstated policies provide coverage for "loss due to sickness which is first diagnosed or treated more than ten days after [reinstatement]." Berkshire argues that the alcoholism for which Maharan was treated in 1989 and the depression for which he was treated after 1992 are both symptoms or manifestations of the same underlying illness--bipolar disorder. According to Berkshire, Maharan's disability is not covered by the policies because the bipolar disorder was treated when Maharan's alcohol-related problems were treated in 1989, before the policies were reinstated.
 
 
 8
 Under New York insurance law, treatment of a symptom is not always sufficient to exclude coverage for a subsequently-detected underlying sickness. There must be a causal nexus between the symptom and condition. New York Insurance Law § 3232(b) "only permits exclusion for conditions which have 'manifested' in symptoms and for which advice, diagnosis, care or treatment was recommended or received." Bunk v. Blue Cross & Blue Shield, 648 N.Y.S.2d 291, 294 (Sup.Ct. Oneida County 1996). To exclude a condition from coverage based on pre-policy treatment of a symptom, that symptom must be caused or produced by the condition. "A non-specific symptom [cannot] be used as a trigger for exclusion." Id. at 295.
 
 
 9
 The evidence supports the district court's finding that the nexus between Maharan's alcohol withdrawal seizures and his underlying bipolar disorder was too tenuous to justify excluding the latter from coverage under the policies. Based on the facts before it, the court found that the treatment of Maharan's ulcer and seizures were like "the treatment of stomach pain in a patient with stomach cancer. Although they treated the symptom, they did not diagnose or treat the underlying bipolar affective disorder." Maharan, at 21. We cannot say that such a finding is clearly erroneous. Neither can we say that it runs counter to New York law. The New York courts have long maintained that public policy requires ambiguities in pre-existing condition policy exclusions to be read against the insurance company. See, e.g., White v. Massachusetts Casualty Insurance Co., 465 N.Y.S.2d 345 (4th Dept.1983). To the extent that there are ambiguities in Berkshire's reinstatement provisions with respect to the term "sickness," the district court correctly interpreted them in a manner favorable to the insured. We therefore affirm.